AYRIS v. AYRIS.

DEEDS—CONDITIONAL DELIVERY—EVIDENCE.

A finding that a deed, claimed by the grantor to have been delivered upon the understanding that it should be withheld from record until his death, was recorded with his full consent, is justified, where it appears that he knew of the recording at the time, but made no objection for seven years, during which time he continued in possession of the premises under a life lease from the grantee.

Appeal from Wayne; Frazer, J. Submitted February 2, 1898. Decided March 29, 1898.

Bill by John Ayris against Henry Ayris and others to set aside certain deeds. From a decree dismissing the bill, complainant appeals. Affirmed.

*Oscar M. Springer*, for complainant.

*Jasper C. Gates*, for defendants.

MONTGOMERY, J. The bill in this case was filed by John Ayris against his sons, Henry, Frank, Allen, and Charles, and their wives, to set aside three several deeds of conveyance, executed, respectively, to Henry, Frank, and Allen, made and dated November 17, 1881, whereby complainant conveyed to each of them, severally, one-third of his homestead, consisting of 80 acres, situate in the township of Greenfield, Wayne county, Mich. The grounds upon which the relief is sought are (1) that it was understood when the deeds were delivered that they would not be recorded until complainant's death; (2) that the consideration of the deeds was that the grantees should stay at home with complainant, and work his farm, without compensation, except their board and clothes, during the period of complainant's life, and that

this they had each and all refused to do; (3) that Allen and Frank left complainant soon after the execution of the deeds, but Henry remained with him for a period of nine years, during which time he shamefully treated complainant, keeping him in fear of personal violence, attempting to poison him, leaving him to care for himself, stripping him of all his property, and finally deserting him in January, 1895. Defendants answer, admitting the making of the deeds, and insisting that the deeds were delivered unconditionally, and were intended to be absolute transfers of the title; denying any agreement on their part that they would work for complainant as alleged; denying all ill treatment of complainant by Henry, and insisting that he had always treated complainant with kindness, and had cared for and supported him in a proper manner until complainant compelled him to leave the land in question in January, 1895.

On January 11, 1877, complainant made and executed his will, whereby he devised this property to his sons Henry, Frank, and Allen, just as he afterwards conveyed it to them by these deeds. When these deeds were executed, they were delivered in escrow to Walter Henderson, who appears to have been complainant's confidential adviser, with the understanding that they were to be delivered to the grantees on complainant's death. Mr. Henderson died in February, 1888, with these deeds in his possession. Thereupon his son, Edwin Henderson, returned the deeds to complainant, who thereupon delivered them to his sons. Henry, Frank, and Allen made life leases of the portions of the land conveyed to them, respectively, running to complainant, which leases were delivered to, and retained by, complainant.

The claim is made that the deeds were delivered with the understanding that they were not to be recorded during the life of the complainant; but the evidence preponderates in favor of defendants on this point. Complainant admitted that he knew of the record at about the date thereof, in 1888, and apparently was satisfied that his

rights were fully protected by the life leases until near the time of filing this bill, in 1895. This fact strongly corroborates the testimony of defendants that the record of the deeds was made with complainant's full assent. Furthermore, the bill of complaint avers "that, at the time said deeds were given, it was understood and agreed between your orator and his said sons that from that time your orator's interest in said lands was and should be a life lease of the same."

The consideration for the deeds was stated to be the sum of one dollar, and for working and caring for him (grantor) in his old age. It is claimed that this constituted a condition, and that defendants have not worked and cared for complainant. At the time the deeds were prepared, it was not intended that they should be delivered until the decease of complainant. As before stated, they were left in the custody of Mr. Henderson with that purpose. It was intended that the sons were to remain on the farm with their father, and render such services as are usual under such circumstances, furnishing a home for him. When the deeds were delivered and the life leases taken, the intention, doubtless, was to secure the complainant in the control of the property. The sons, or some one of them, continued to live on the farm and care for complainant until 1895. Then trouble arose. Complainant conceived that an attempt had been made to poison him, and this naturally resulted in the breaking up of the household, complainant leaving the premises. Henry afterwards left the premises, and complainant has since leased them to Allen.

The case really turns on the question of whether the defendants were in fault, or whether complainant rightly accused Henry and his wife of attempt to murder. There was testimony tending to show neglect and unkind treatment of complainant, but the circuit judge, who saw the witnesses, was evidently impressed that these complaints were not well grounded; and the alleged attempt to poison complainant is fully disproved. We do not find the testi-

mony in support of complainant's case sufficiently convincing to justify us in reversing the decision of the circuit judge.

The decree will be affirmed, with costs.

The other Justices concurred.