132   300
s93NW 614
p133  646

## CORNELL v. WHITNEY.

Deeds — Consideration — Support — Breach of Condition — Trusts.

Complainant conveyed his homestead to defendant in consideration that he should be furnished "a comfortable house to live in, good board and lodging, clothing, and all necessaries of life." After living with defendant for a year and a half, he left without cause, and defendant published a notice forbidding any one to trust or harbor him on his account. On a bill by complainant to set aside the deed, it was *held* that a decree should be entered compelling defendant to pay for complainant's maintenance since the publication of the notice and until complainant should choose to return, declaring the conveyance a trust to secure the performance of defendant's obligations, and, upon failure to perform such obligations, the property should revert to complainant.

Appeal from Wexford; Chittenden, J. Submitted January 7, 1903. (Docket No. 14.) Decided February 17, 1903.

Bill by John Cornell against Frank Whitney and Mary E. Whitney to set aside a deed. From a decree for complainant, defendants appeal. Modified.

*Parm C. Gilbert*, for complainant.

*Patchin & Crotser*, for defendants.

Carpenter, J. Complainant obtained a decree in the court below setting aside a conveyance of his homestead to the first-named defendant, Frank Whitney, who is the husband of the other defendant, Mary E. Whitney. In consideration of this conveyance and the transfer of complainant's personal property, defendant Frank Whitney agreed in writing to furnish complainant "a comfortable house to live in, good board and lodging, clothing, and all necessaries of life; in case of sickness, with proper medical

aid and attendance; and at death give his remains a respectful burial." The decree was rendered on the ground that the defendants had violated this agreement. Defendants claim that the testimony did not establish such a violation of the agreement as to warrant the decree, and this claim presents the only question this court is called upon to consider.

The conveyance in question was made on the 5th day of September, 1899, when complainant was more than 80 years old, but in full possession of his faculties. At this time defendants were living in Traverse City. They immediately removed to the property in question, and complainant resided there with them, as an inmate of their family, until May, 1901. During this period the evidence clearly proves that defendants faithfully performed every obligation of the contract above quoted, except this: They did not furnish complainant with clothing. It clearly appears, however, that complainant provided himself with clothing from means of his own, under an arrangement by which this outlay should be reimbursed from the proceeds of a sale of a part of the personal property transferred by him to the first-named defendant.

Complainant left his home with defendants because of a difficulty which deserves special mention. Early in May, 1901, a daughter of defendants eloped with an insurance agent. Shortly after this occurrence a sister-in-law and a niece of complainant called at defendants' house, and in a conversation with the niece complainant said, referring to the daughter who had eloped :

"They have always brought the girl up in laziness and idleness, and she didn't amount to much anyway. The first time I am up to your house, I am going to tell you something."

Thereupon defendant Mrs. Whitney came from the next room, and said:

"If you have anything to say, say it to me. Don't go to the neighbors and say it or tell it."

Complainant testifies that Mrs. Whitney also uttered a vile slander concerning one of his daughters, but this testimony we do not credit, as it is contradicted not only by Mrs. Whitney, but also by complainant's niece. The following morning complainant left defendants' house, and took up his abode with one of his children. Shortly thereafter the first-named defendant published in the Sherman Pioneer, a newspaper in circulation in the community where the parties resided, this notice:

"*To Whom It May Concern:* That John Cornell has left his bed and board without any just cause or provocation, and I forbid any one trusting him or harboring him on my account, for I will not pay any bills after this date.
"FRANK WHITNEY."

It also appears that defendants have since that time furnished complainant with no clothing or other necessaries, and have made no effort whatever to induce complainant to return to their home. It should be noted, too, that this finding of facts is not materially different from that of the trial judge.

We agree with the trial judge that—

"Defendants' duty, undoubtedly, was to go to him [complainant], and try to induce him to come back home; to endeavor to reason him out of the notions he had got into his head, erroneously, perhaps. Instead of doing that, they do the very thing that would antagonize him and keep him away. They place a notice in the paper, wherein they say that they will not hereafter pay any of his bills, nor will they pay anything to any person who harbors him or trusts him. This, to a man of any spirit or mettle, would be the very thing that would drive him away and keep him away. This contract does not require that he shall live at that home. There is no special provision in the contract to that effect, although I think that that would be presumed in any case,—that he was to live there. But this does not prevent them or him from buying his own clothes, or their furnishing him with money to take care of and pay his little expenses."

Complainant testified that this notice was published and came to his attention some days before the trouble which

occurred in May, while he was absent from home on a short visit to his daughter; and, in explanation of his contention that he left because Mrs. Whitney slandered his daughter, he testified that he was willing to continue his relations with defendants, notwithstanding said publication. Defendants urge that this testimony proves that this publication was not a serious grievance. There would be force in this contention if we credited the testimony, but we do not credit it. As already indicated, we find—and in making this finding we give full credit to defendants' testimony—that said publication did not occur until after the separation in May. We cannot credit complainant's explanation for taking a certain step, after we have found that he did not take it. Defendant Frank Whitney insists that he published this notice because he had reason to fear that complainant's relatives would seek to hold him responsible for complainant's board, and because both his physician and the township supervisor advised it. These circumstances mitigate, but do not excuse, his wrongful conduct. No advice could justify the repudiation of defendants' contractual obligation to provide complainant with clothing and proper spending money, whether he lived with them or elsewhere; nor could it justify the creation of such an obstacle as this publication created to complainant's return to his old home, unless he returned an object of pity, humiliation, and ridicule.

We agree, too, with the trial judge that the property in dispute "ought to be devoted to the purpose of his [complainant's] care and maintenance hereafter." We do not think, however, that the evidence in this case justifies the decree of the court below. Complainant, for a year and a half, enjoyed the comforts of a home with defendants, and would have continued to enjoy those comforts, had he not chosen, without just cause, to leave his home. Notwithstanding what has occurred, it is not at all unlikely that complainant may choose to return to defendants, and be entirely satisfied with his home with them. Defendants, by removing to the property in dispute, and

carrying out this contract for the time specified, have equities which no court should disregard. At the same time we do not think that complainant should be compelled, against his will, to take up his residence in their home.

Under the circumstances of this case, a decree should be made compelling defendant Frank Whitney to reimburse complainant for the cost of his maintenance since the publication of the notice above quoted, to pay such a sum each week as will secure complainant's proper maintenance during such time as he shall choose to reside elsewhere than in defendants' house, and to pay the medical attendance and funeral expenses provided in the contract. The decree should, of course, recognize complainant's right to return to his home with defendants whenever he chooses to do so, and to receive there the full benefits of his contract, as originally contemplated. The conveyance in question should be declared a trust to secure the performance of these obligations, and, in case of their nonperformance, this trust should end, and the property revert to complainant.

As the record does not show what complainant has expended for his past maintenance, or what will be a proper allowance for his future maintenance, the decree will be reversed, and the case remanded to the court below, to take proofs, and to enter a decree in accordance with this opinion. Complainant is entitled to costs of the trial in the circuit court. Defendants will recover costs of this court. These costs shall not be collected from the money owing by them to complainant, or from the property which is the subject of this suit.

The other Justices concurred.