133    643
s138   177

WOOLCOTT v. WOOLCOTT.

DEEDS—CONDITIONS—SUPPORT OF GRANTOR — FORFEITURE — SEPA-
RATE MAINTENANCE.

> Where a father conveyed land to his son on condition that the
> latter should support him during the remainder of his life,
> a quarrel between the father and son, which was provoked
> by the father, but in consequence of which he left the son's
> home, was *held* insufficient to work a forfeiture of the estate
> conveyed, but the son was required to pay the cost of the
> father's maintenance so long as he should choose to reside
> elsewhere.

Cross-appeals from Berrien; Coolidge, J.   Submitted
May 13, 1903.   (Docket No. 59.)   Decided June 30, 1903.

Bill by Samuel Woolcott against Elmer L. Woolcott
and Elizabeth A. Woolcott to set aside certain deeds.
From the decree rendered, both parties appeal.  Reversed
(defendants prevailing).

*George M. Valentine* (*George W. Bridgman*, of
counsel), for complainant.

*Gore & Harvey*, for defendants.

CARPENTER, J.   The defendant Elmer is a son of com-
plainant.  About July 1, 1901, the defendants, who are
husband and wife, at the request of complainant and his
wife (since deceased), removed from their home in
Nebraska to the farm occupied by complainant, situated
near Watervliet, Berrien county, in this State.   On the
24th of that month, complainant and his wife deeded said
farm to defendant Elmer.   That deed imposed upon the
defendant the obligation to "support and maintain the
said first parties during the term of their natural lives, he
or she surviving, * * * furnish them with all the
necessaries of life, suitable clothing, care for them in sick-

ness as well as in health, pay all doctors' bills and funeral expenses, and erect suitable tombstones to their graves." The property transferred by said conveyance consisted of two parcels; one containing 45 acres of land, upon which the homestead buildings were situated, and the other containing 55 acres of land, situated in another section. Complainant and his wife had on the 25th of January, 1887, executed a deed which by its terms conveyed said 55-acre parcel to defendant Elmer, and on the 16th of January, 1899, had executed a deed which purported to convey said 45-acre parcel to defendant Elmer. This suit was brought to set aside these three deeds, on the claim that the deeds executed in 1887 and 1899 were never delivered, and that defendants had not complied with their agreement contained in the deed of 1901. The court below rendered a decree setting aside the deeds, and requiring complainant to pay defendant Elmer $1,637, to compensate him for losses incurred and money advanced. From this decree, both parties appeal.

Defendants contend that the deeds of 1887 and 1899 were delivered. We are bound, however, to conclude from their testimony that the deed of 1887 was executed to secure the payment of money owed by complainant to his son, and that the deed of 1899 was intended to vest title on condition that the son should remove to the farm, and there support his parents. Since, according to this testimony, the deed of 1887 was in equity a mortgage, and the deed of 1899 was delivered on conditions substantially like those contained in the deed of 1901, it is obvious that defendant's ownership of the land depends upon his compliance with the conditions contained in the last deed executed. As we are of the opinion that the testimony does not prove such a failure on the part of defendants to perform their agreement in that deed as to justify a decree setting it aside, it is unnecessary to determine whether or not the deeds of 1887 and 1899 were delivered, and whether or not any balance of the money secured by the deed of 1887 remains unpaid.

The only time that defendants ever failed in any duty owed complainant was about the 1st of August, 1901, when complainant and defendant Elmer had a violent quarrel, the particulars of which are as follows: A misunderstanding, of no particular consequence, had arisen, about the place where a load of wood should be deposited. Complainant became passionately angry toward his son Elmer, and called him a number of vile names. The son, who, it seems, had inherited his father's disposition, was not as patient as he should have been, and, under the provocation, replied in language that a son should never use to a father. While the altercation was in progress, the defendant Elizabeth remonstrated with complainant. He thereupon turned and applied to her a vile epithet. Her husband, defendant Elmer, thereupon became violently enraged. He caught hold of his father, and quite violently, though in no way injuring him, forced him down into a chair. As soon as his anger had cooled, he felt ashamed of his conduct, and in a day or two expressed his feelings of repentance to his father, the complainant. About 10 days after this occurrence, during which interval no incident of consequence occurred, complainant and his wife, being instigated, as we feel warranted in believing, by their other children, removed from their home, and subsequently commenced this suit.

While we cannot approve the conduct of the defendant, we cannot agree with the trial judge that it should work a forfeiture of his estate in this farm. We agree with him that, "though his father was quarrelsome, it nevertheless became the duty of Elmer, under the circumstances, to exercise more than ordinary forbearance and patience." We look upon the misconduct of Elmer, however, as an outburst of passion naturally resulting, in a man of his temperament, from the misconduct of complainant himself. While it may be true, as stated by the trial judge, that "the whims and caprices of old age, however unreasonable, must be tolerated and forgiven by the child, when the parent has conveyed all his property to such child in

consideration of maintenance," we cannot think that a single act of misconduct, provoked by a wrong done by the parent, is a sufficient ground for depriving the child of that property. To grant relief of that kind in a case like this not only affords a parent adequate protection against undutiful children, but it enables him, by his own wrong, to deprive those children of their property.

In our judgment, this case is much like the case of *Cornell* v. *Whitney*, 132 Mich. 300 (93 N. W. 614). We may properly say in this case, as we said in that: "Notwithstanding what has occurred, it is not at all unlikely that complainant may choose to return to defendants, and be entirely satisfied with his home with them. *    *  , * At the same time, we do not think that complainant should be compelled, against his will, to take up his residence in their home. Under the circumstances of this case, a decree should be made compelling defendant" Elmer L. Woolcott "to reimburse complainant for the cost of his maintenance" since the time complainant left his home, "to pay such a sum each week as will secure complainant's proper maintenance during such time as he shall choose to reside elsewhere than in defendants' house, and to pay the medical attendance and funeral expenses," and to perform all other agreements and obligations imposed upon him by his deed. "The decree should, of course, recognize complainant's right to return to his home with defendants whenever he chooses to do so, and to receive there the full benefits of his contract, as originally contemplated. The conveyance in question should be declared a trust to secure the performance of these obligations, and, in case of their nonperformance, this trust should end, and the property revert to complainant. As the record does not show what complainant has expended for his past maintenance, or what will be a proper allowance for his future maintenance, the decree will be reversed, and the case remanded to the court below, to take proofs, and to enter a decree in accordance with this opinion. Complainant is entitled to costs of the trial in the circuit court.

Defendants will recover costs of this court. These costs shall not be collected from the money owing by them to complainant, or from the property which is the subject of this suit."

The other Justices concurred.