## ROOT v. SNYDER.

1. DEEDS—CONTRACTS—CONSIDERATION.

Conveyances of property so as to create a joint tenancy with survivorship, executed to the defendants in consideration that they should move from Washington, D. C., to Bay City, Michigan, and make their home with complainant, care for him and manage his property, are supported by a sufficient consideration, where the defendants had undertaken performance in good faith, materially changing their manner of life and circumstances, and had been prevented from further carrying out the contract by the acts of the complainant.

2. SAME—PERPETUITIES—STATUTES.

A deed of real property to four persons as joint tenants with right of survivorship is not repugnant to the statutes against perpetuities, notwithstanding the employment of the words "to their heirs and assigns and to the survivors or survivor of them, and to the heirs and assigns of the survivors or survivor of them forever:" the words "heirs" not being intended as words of purchase, and operating only to indicate that the estate conveyed is in fee simple.

3. SAME—CONDITIONS—SUPPORT.

Where it is apparent that the feelings between the parties have so changed that the contract to live together in complainant's home cannot be performed with harmony as they intended, the court of equity, while it cannot create a new contract for the parties, may enter a decree by which the equities of all are adjusted.

Cross-appeals from Bay; Collins, J.  Submitted April 7, 1910.  (Docket No. 13.)  Decided May 7, 1910.

Bill by Melvin A. Root against Jared M. Snyder and others to set aside certain deeds and for an accounting. Defendants filed an answer in the nature of a cross-bill praying affirmative relief.  From the decree rendered, all parties appeal.  Modified.

*Weadock & Duffy* (*De Vere Hall*, of counsel), for complainant.

*Stoddard & McMillan*, for defendants.

MOORE, J.  The bill of complaint was filed in July, 1907.  The complainant was 69 years old the following September.  His wife died in April, 1904.  The complainant and his wife were the owners by the entireties of their home in Bay City, worth about $5,000, and a business block and dwelling house in that city worth about $20,000.  Mrs. Root had been something of an invalid for many years, but was able to be about, and she and her husband were considerable travelers.  They were spiritualists.  Mrs. Root was one of the leading spiritualists of the State, and her services were in demand as a lecturer.

The defendant Jared Snyder was the brother of Mrs. Root; the other defendants are the wife and daughter of Jared Snyder.  A considerable correspondence and a voluminous record of more than 1,100 printed pages show a very cordial and affectionate feeling between Mr. and Mrs. Root and these defendants, running through a series of years.  They had made long visits to each other in each other's homes.  At the time of the last illness of Mrs. Root, and for more than 10 years prior thereto, the defendants had lived in the city of Washington, where Jared M. Snyder, then about 63 or 64 years old, was in the employ of the Federal government, at a salary of $70 a month, and the evidence is that he had recently passed

a civil-service examination, and was in the line of prefer-
ment.

In the testimony of Mrs. Snyder the following occurs:

"*Q*. In Washington what were your associations and
society?

"*A*. Well, I was connected with the Congregational
Church choir. I was not a solo singer, but I had a very
important position as chorus singer. I was assistant to
the regular music committee. I was secretary of the
choir; I also was a member of the inaugural chorus, I
think, three times. My name was on the list, which
would call me whenever there was any chorus work to be
done. It brought me in connection and association with
music lovers and musical people of Washington. Our
choir gives concerts frequently during the winter, and our
evenings with the choir were considered quite an inter-
esting time. Dr. Bischoff was a splendid organist, and
considered one of the very finest. I have heard Dr.
Bischoff stop the singing of 60 or 75 and ask why Mrs.
Snyder was not singing. I thought that was a great
compliment. He was blind.

"*Q*. What was your daughter doing in Washington?

"*A*. Flora was employed in several places. I believe
she was in the Equitable. The last place I believe was in
Woodworth & Lothrup's, a large store.

"*Q*. What, if any part, did she take in entertainments?

"*A*. Flora did a great deal of reading. I think she,
perhaps, had recited or read in most every church of note
in Washington. She did a great deal of charity work in
the churches.

"*Q*. Tell us how you liked living in Washington?

"*A*. It is one of the most charming cities in the United
States to live in. I think most every one who has ever
visited there would feel the same.

"*Q*. Was there any particular reason why you thought
Washington agreeable that you have not stated?

"*A*. I have always felt attached to it because I was
born there. I had quite a circle of friends there that knew
me as a girl. I remembered some of the old official fam-
ilies, more old school friends, old-time friends, which
brought me in touch with very many people that were in-
teresting."

Flora B. Snyder had qualified herself as a bookkeeper,

and was an actress, and expected to enter upon a career as an actress. It is impossible to read this record without reaching the conclusion that Mr. and Mrs. Root and all the defendants were people of more than usual intelligence and refinement, and were very fond of each other.

On June 22, 1903, Mrs. Root wrote defendants a letter, in which she said:

"I have wanted you to have this home if you survived us, as you are likely to—some one is to have it. * * * If you were here so we could work together for a time, Melvin says he thinks all might be adjusted, and you have an easy time and be comfortable."

This letter, after discussing family matters, closes, "Your own sister and brother, Mattie and Melvin." There is evidence in the record that indicates Mr. Root approved of the writing and sending of this letter. Mr. and Mrs. Snyder visited in Bay City during the last illness of Mrs. Root, when a conversation was had with Mrs. Root about her approaching death, and her desire that defendants should come on and take care of Mr. Root during the remainder of his life, and have the property. Later Mrs. Root died.

In April, 1905, the complainant entered into a correspondence with defendants, with a view of having them give up their home and come and live at Bay City. We quote from some of this correspondence:

"April 16, 1905.

"Jeddie's considerate letter of the 13th came yesterday. I am glad of the careful thought you are giving to the arrangement I proposed, for indeed it is 'momentous.' Libbie gave her best thought to it and so have I. * * * The time is now ripe. Hence I wish you could communicate with dear Flora submitting to her my last letter on the matter with what you choose to write her, so if it is thought best for me to journey to Washington, I may have notice of when Flora will be there, and a little time to arrange for my leaving here. * * * Keep me advised of the drift in the matter of your coming to live in Bay City. I want it to be of your own pleasure if you come, for I can arrange differently if desired, but my first

thought is of you. I think if you come, of putting the property affairs all in such shape that if I join Mattie (while you are here) no matter where I may happen to be, you two, Susie and Jeddie will be put on record as survivors and owners of the property Mattie and I had so deeded. * * * So please promptly notify me, and I wish Susie's expression as well as Jared's, also Flora's if convenient, just how this all shapes in your minds."

"1209 Fifth Avenue,
"BAY CITY, MICH., April 8, 1905.

"DEAR WASHINGTON ONES: * * * Lately I have been wondering if your experiences have prepared your minds to consider favorably living in Bay City with assured living expenses and care only of looking after the two houses and the block. What I mean is I desire to travel even so far as the Hawaiian Islands and may be the Philippines. My absence, if all goes well, will be quite indefinite and may be I will be kept by vicissitudes of travel from returning. It was Libbie's clear idea to be helpful to you in which I heartily joined. Together we hoped to travel and we thought of your living at 1209 Fifth avenue and the rentals of the block and house behind would provide income for your support and afford us enough for expenses while journeying. This is an epitome of my thought. If you see the way clear to encourage this plan, will visit you after the renovating work is so I can leave it, and we will talk details in full. I want you both, and include Flora, if it is convenient, to consider this idea carefully and let me know what you think of it as early as you can. * * *

" Now dear ones bear in mind I have your welfare profoundly in my purpose, and give this matter your best thought soon.

" Love to Flora and yourselves,

" MELVIN."

"1209 Fifth Avenue,
"BAY CITY, MICH., April 24, 1905.

"DEAR WASHINGTON ONES: — Yours of the 22nd awaited my homecoming at noon. I am gratified that you had a calm consideration of the matter. As I understand Flora will be home to remain from about the first of May, I will endeavor to leave home soon after so as to reach you probably during the second week of May. Then if all is agreeable, and you can arrange to soon

come to Bay City so I can show Jared how I take care of business, I will prepare to start West when you feel settled. If I should do anything more definite before I see you, to enable you to conclude your plans and at least Jared be with me in Bay City a while to practice details here, in case you take up a home permanently in Bay City, please promptly let me know.

"My work at the block is drawing to a finish, and I am thinking of leaving house finishing to your own care.

"This much hastily so you may know my program.

"Affectionately,

"MELVIN."

Mr. Root then went to Washington and made an arrangement with the defendants. The substance of the agreement concluded in Washington was that the defendants would break up their housekeeping in Washington as quickly as possible, and come to Bay City. The property should be conveyed so that it should be held in joint tenancy; all of the parties were to have their living out of the property; the principal care and management of the property should be with the defendant Jared; the three defendants should maintain the home of the four of them; and matters should be so arranged that the complainant should have time and means to travel in accordance with his desires, which were known to all the parties. He wrote the following letter on his return home:

"Alleghany Hotel,
"BAY CITY, MICH., May 28, 1905.

"DEAR BROTHER GEORGE:—I reached home last Monday from a visit with Jared, Susie and Flora. The result is that they appoint tomorrow, Monday, to start with their things to Bay City, to make their home in our house, arriving about Wednesday. When they have become sufficiently familiar with matters here to take full care of them without my presence, I propose starting on my leisurely trip through Michigan, Illinois, Minnesota, Iowa and your State. How long it will take me to reach you, I have no definite idea, but I will keep you informed of my progress. * * * Women and men thoroughly cleaned inside of our house last week, and in a couple of days' work the painters will be done outside. All is sweet now after Libbie's plan, and the 'children' as she called them,

will find a grateful home. I am quite well, and I am happy in the prospect.

> " Affectionately,
> " MELVIN."

And in paragraph 5 of the bill, in describing the estate which it was intended to convey, it is said:

" He suggested to the said Jared M. Snyder that if he and his wife, Susan W. Snyder, and his daughter, Flora B. Snyder, would move to Bay City, Mich., and make their home with him, and make a home for him with them, * * * he would put the title of his property in such shape that whoever of the four should survive him they would own all of the property as joint tenants."

The statements in the testimony and of the bill quoted are in harmony with all of the testimony of the complainant upon this subject. He never at any time, up to and including the filing of the bill in this case and the giving of the said testimony, had in mind that the deeds to be made, or that were made, were void, and that the estate created thereby was void, but he did distinctly and specifically have in mind and intend to cause to be conveyed, and supposed the property had been conveyed, to the four, to be held by them as joint tenants. Mr. Root had no children or descendants.

In the latter part of May, 1905, the defendants gave up their home in Washington in pursuance of the agreement, and entered upon their part of the undertaking. For the purpose of carrying out his part of the agreement Mr. Snyder was introduced by Mr. Root to the tenants occupying his various properties, who were authorized to pay rent to Mr. Snyder; a bank account was opened, against which all the parties to this litigation were authorized to check. Mrs. Snyder and her daughter took charge of the household, and administered the household affairs. Mr. Root prepared two deeds for the purpose of carrying out his agreement with defendants, as he states in his bill of complaint, supposing that said agreement, though oral, was binding and legal, and desiring to carry it into effect. The deeds are as follows:

"This indenture, made this twentieth day of June, in the year of our Lord one thousand nine hundred and five, between Melvin A. Root, of Bay City, Michigan, survivor of his wife, Martha E. Root, deceased (who were joint tenants), party of the first part, and Charles H. Frantz, of the same place, party of the second part.

"Witnesseth that the said party of the first part for and in consideration of the sum of one dollar to him in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, does by these presents give, grant, alien and confirm unto the said party of the second part, all those certain pieces or parcels of land situate and being in the city of Bay City, county of Bay and State of Michigan and described as follows: * * * Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining: To have and to hold the said premises, as herein described, in trust only, to convey the same by a sufficient deed of conveyance to Melvin A. Root, Susan W. Snyder, Jared M. Snyder and Flora B. Snyder, as joint tenants and to their heirs and assigns, and to the survivors or survivor of them, and the heirs and assigns of the survivors or survivor of them, forever.

"In witness whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.

"MELVIN A. ROOT.        [L. S.]," etc.

This deed was properly witnessed and acknowledged.

"This indenture, made this twentieth day of June, in the year of our Lord one thousand nine hundred and five, between Charles H. Frantz and his wife, Edith F., of Bay City, Michigan, parties of the first part, and Melvin A. Root, Susan W. Snyder, Jared M. Snyder and Flora B. Snyder, parties of the second part.

"Witnesseth that the said parties of the first part for and in consideration of the sum of one dollar to them in hand paid by the said parties of the second part, the receipt whereof is hereby confessed and acknowledged, and in pursuance of the terms of a deed of conveyance this day executed by Melvin A. Root to Charles H. Frantz, do by these presents give, grant, alien and confirm unto the said parties of the second part, as joint tenants, and to their heirs and assigns, and to the survivors or survivor of them, and to the heirs and assigns of the survivors or survivor

of them, forever, all those certain pieces or parcels of land situate and being in the city of Bay City, county of Bay, and State of Michigan, and described as follows, to wit: * * * Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining: To have and to hold the said premises, as herein described, with the appurtenances unto the said parties of the second part, and to them as joint tenants and not as tenants in common, and to their heirs and assigns forever."

This deed was also properly witnessed and acknowledged.

After these deeds were delivered, they were placed on record by Mr. Root, and all parties seemed greatly pleased at the situation. The evidence is overwhelming, including statements in many letters written and sent by Mr. Root, that he was pleased with what followed. As late as March 9, 1907, in writing to a friend he said:

"The prospects for building and improvements in the city never were greater than the present. Everybody feels hope and cheer. Our business is prosperous and Jeddie has it well in hand so I have little care. I am thinking of leaving home next month for a visit to my old home in Lockport, N. Y., and to friends in the vicinity. Then if all seems right to do so I think of going southeast in time to witness the naval opening of the Jamestown, Va., Exposition the 26th of April. For years I have wished to study the people of our southern States, and I think that will afford a fine opportunity. If the exposition proves as interesting as did the Chicago fair, I may spend much of the summer near Jamestown. Libbie and I spent five months in the Chicago event and enjoyed every day. We made it a school of instructions and that's what I wish to do next summer. * * *

"In fact a lecture we attended last night given by J. Adam Bede, a congressman, declared the most happiness is to be gotten in the home where love is. So I nestle close in my loves and get the best.

"While we rejoice in all the good you have in your Happy Land we trust you will keep Flora and Susie and Jared and me among all those you share its goodies with. They are all well and busy—the girls with spring

sewing, running two machines, and Jared busy with providing us the comforts of the season."

The feeling of satisfaction continued until about the first or middle of April, 1907, when for reasons not satisfactorily explained by this record, Mr. Root demanded that the property be redeeded to him. Then trouble of a serious nature arose between the parties. The complainant made it very clear by his conduct, not only that he did not want defendants to continue to perform their agreement, but that he intended to make it impossible for them to do so, and, as before stated, a little later the filing of this bill of complaint followed.

In the bill of complaint the following appears:

"*Eighth.* That there was no consideration whatever moving from the said Jared M. Snyder, Susan W. Snyder and Flora B. Snyder, or either of them, to your orator for the deeds so made, executed, and recorded as hereinbefore mentioned. * * *

"*Eleventh.* Your orator further represents that he is advised and believes that the agreement made between him and the said defendants, by reason of its not being reduced to writing, is not enforceable, and that there was no legal or valid consideration for the making of said deed."

There is an averment that defendants have not carried out their part of the agreement.

The prayer is as follows:

"*Fifteenth.* Your orator further prays that a preliminary injunction be issued out of and under the seal of this court, restraining the defendants from conveying or incumbering the property herein described, or undertaking to convey or incumber the same by deed, mortgage, consent judgment, or otherwise, until the further order of this court, and your orator further prays for the decree of this honorable court, wholly setting aside the said deeds and conveyances herein set forth as having been made to Charles H. Frantz, and by the said Charles H. Frantz to your orator and the defendants herein named, as being wholly without consideration and void, and requiring the defendants herein named to reconvey such property to

your orator, and surrender and deliver up possession of the premises described herein.

"*Sixteenth.* Your orator further prays that an accounting may be had of the moneys received by the defendants from the rents and income of the property herein described, and that a fair and equitable allowance may be made to the defendants for any loss or expense to which they may have been put by reason of coming to Bay City, if they are entitled to any such allowance in the judgment and opinion of the court, and that a true balance between the parties be ascertained and determined, and this complainant again offers, in case the said balance is found against him, to pay the same forthwith."

There is no general prayer for relief, and there is no suggestion in the bill of complaint that the deeds are void because of the perpetuities created therein.

Defendants put in an answer in the nature of a cross-bill, in which occurs the following :

"*Seventh.* Defendants deny the matters alleged in the seventh paragraph of said bill of complaint, except that they admit that it was the understanding of all parties that the deeds in the sixth paragraph of said bill of complaint mentioned were intended to place the title to the property jointly in complainant and defendants as joint tenants, with the right of survivorship. They aver that it was understood and agreed that said property should be held, used, and enjoyed by all said parties as joint tenants, with the right of survivorship, and that the income therefrom should be used for the joint benefit of all, and the expense of maintaining the joint family would be paid therefrom.

"*Eighth.* These defendants deny that there was no consideration for the making of said deeds, and aver that there was a good, sufficient, and valuable consideration for the making, executing, and delivery of said deeds."

In this cross-bill they aver they have performed or are ready to perform their part of the agreement, and pray for an injunction, and the appointment of a receiver, for an accounting, and ending with a prayer for general relief.

The case was heard in open court. The judge filed a long written opinion and made a decree from which all

parties have appealed.   In the written opinion occurs the following language:

"The complainant himself prepared and executed the Frantz deed, from himself to Frantz and wife, and also prepared and caused to be executed and delivered to himself the deed from Frantz to the grantees.   The entire preparation of the deeds and the form of the expression set forth in them were the acts of the complainant.

"Prior to the execution of the deeds all of the parties expected the deeds to be deeds creating a joint tenancy in the property to the grantees, and all of them took possession of the property, and have held the joint possession thereof under the belief that the deeds created a joint tenancy.   This previous and subsequent understanding has been that held at all times by the defendants, and by the plaintiff up to and including the time of filing of the bill and the giving of his testimony, and no other theory has been announced until set forth in the arguments of the case.   *   *   *

"Another specific consideration affects this claim of the complainant.   In this case all of the parties are of legal age and before the court, and if the intention of the complainant is clear, and it was his intention to convey an estate of a different quality from that conveyed by the deeds, they may be reformed to carry out his clear intention.   To state the claim made on behalf of the complainant in its fullness, if sustained, the complainant is put in the position of doing wrong in promising a good title and estate, giving void deeds and having them acted upon, and now asking to have his solemn deeds declared void. This position puts the complainant in the position of attempting to take advantage of his own wrong, and if he is successful, then such would be the result.   *   *   *

"It is a contention of the complainant that the consideration for the deeds has failed, and that this failure arises from the fact that the agreement under which the deeds were made has not been carried out; that the property has not been properly attended to by Jared M. Snyder; that the tenants of the property have been dissatisfied with his management; and that the defendants have failed to make the kind of a home for him, and to furnish him the table comforts, and other home comforts, that they agreed to furnish, and that he had a right to have by virtue of the promises that were made before the conveyances were made.   *   *   *

"The conclusion, however, which I have reached upon this point in substance is as follows: That the requirements of plaintiff, so far as making the home and furnishing the home with the home comforts, in the way of food and care of rooms, and everything of that kind, were concerned, were such as were easily capable of being performed by the defendants, and were in fact performed substantially as agreed and understood at the time of the commencement of the arrangement prior to the execution of the deeds and contemporaneously therewith. The preponderance of proof shows that the complainant's charges upon this subject are not sustained.  *  *  *

"The logical result of the conclusions above indicated might be a dismissal of the bill of complaint, but a careful consideration of all of the circumstances impels me to a different action. Notwithstanding the conclusion reached that the complainant was in fault, this situation remains. A friendly relation between the parties for the future is impossible. The joint home in the homestead, to be maintained as it was understood and agreed between the parties at the time, cannot be hoped for. A home for the complainant, which was a part of the consideration for the conveyance in the manner agreed upon, he will not have. It is not in the power of the complainant to restore the defendants to their positions and their home in Washington as it was when he entered it in May, 1905.

"I have come to the conclusion that the case should be disposed of by a decree which will in effect be a rescission of the original agreement between the parties, giving to them as nearly as may be what they should have as a result of the rescission and their changed conditions, having regard, as far as possible, to the rights and equities of, and attempting to be just and fair to, all the parties. And accordingly I direct that a decree be entered in this case, providing substantially as follows:

"1. That the defendants release all claim of every name and nature to the complainant of the homestead, and the personal property therein, including the piano, and deliver possession thereof to the complainant within a reasonable time after the entry of this decree.

"2. That the block stand and be held by the complainant and the defendants as joint tenants.

"3. That on account of the defendants' extra expense in breaking up their home in Washington and removing to Bay City, in addition to the amount paid on that ac-

count by the complainant, and on account of amounts earned by the defendant Flora, and the amounts paid in joint account as proceeds of life insurance of the defendant Jared, and other considerations, the complainant pay to the defendants out of the joint fund the sum of $600."

A decree was entered embodying the above and many other details, from which decree, as before stated, both parties have appealed.

As to the claim of complainant that the deed was without consideration, we agree with the conclusion of the lower court that there is an abundance of testimony showing a consideration. The arrangement was brought about by complainant. The defendants changed their situation very much to their disadvantage; all in good faith entered upon the performance of their part of the agreement. They have substantially completed their agreement, and any failure to complete it on their part is due to the acts of complainant. See *Pike* v. *Pike*, 121 Mich. 170 (80 N. W. 5, 80 Am. St. Rep. 488), and the many cases cited in that opinion; *Greenwood* v. *School District*, 126 Mich. 81 (85 N. W. 241); *Ruch* v. *Ruch*, 159 Mich. 231 (124 N. W. 52); *Goff* v. *Thompson*, Har. Ch. (Mich.) 60; *Leonardson* v. *Hulin*, 64 Mich. 1 (31 N. W. 26); *Bird* v. *Pope*, 73 Mich. 483 (41 N. W. 514); *Schuffert* v. *Grote*, 88 Mich. 650 (50 N. W. 657, 26 Am. St. Rep. 316); *Ayris* v. *Ayris*, 116 Mich. 484 (74 N. W. 704); *Cornell* v. *Whitney*, 132 Mich. 300 (93 N. W. 614); *Woolcott* v. *Woolcott*, 133 Mich. 643 (95 N. W. 740), 138 Mich. 176 (101 N. W. 218).

Though that theory does not seem to have been in the mind of complainant or of counsel when the pleadings were drawn, it is now insisted that the estates created by the conveyances are void as an encroachment upon the statutory prohibition against perpetuities. The question is argued at great length in the brief of counsel. There can be no reasonable doubt as to what the parties understood the agreement to be, and that they both acted upon it, and that the complainant himself undertook to make

such conveyances as would make the agreement effective. It would be a strange use to make of a court of equity if an appeal to it could be successfully made which would accomplish what is sought to be accomplished here by the complainant. If the deeds prepared by the complainant are not effective to carry out the purpose the parties had in mind, and which they supposed they were making effective, they should be corrected, instead of being declared void. See the cases already cited in this opinion, and also see *Truesdail* v. *Ward*, 24 Mich. 117; *White* v. *Smith*, 37 Mich. 291; *Waldron* v. *Railway Co.*, 55 Mich. 420 (21 N. W. 870); *Common Council of Cedar Springs* v. *Schlich*, 81 Mich. 405 (45 N. W. 994, 8 L. R. A. 851); *Board of Sup'rs of Cheboygan County* v. *Township of Mentor*, 94 Mich. 386 (54 N. W. 169); 16 Cyc. pp. 144, 686. We think, however, the deeds should not be construed as counsel contend. Section 8826, 3 Comp. Laws, reads:

"All grants and devises of lands, made to two or more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."

The words "heirs" in the deeds are not used as indicating purchasers, but for the purpose of showing the estate in the grantees to be one in fee, and that is the effect of the deeds.

The complainant has no occasion to complain of the decree. Have the defendants? The court below recognized the difficulties of the situation when it stated in its opinion:

"The logical result of the conclusions above indicated might be a dismissal of the bill of complaint, but a careful consideration of all of the circumstances impels me to a different action."

The defendants also recognize the difficulty of working out a result that shall do exact justice and equity, in view of the impossibility of making for the parties such a home

as was contemplated, even though that impossibility was
brought about by the act of complainant. The defend-
ants contend that, as a matter of law and equity, the bill of
complaint should be dismissed, but, after quoting from
the opinion of the circuit judge that he had concluded to
enter a decree intended as an equitable division of the
property, say they are not averse to a decree of this na-
ture, but that they think the decree entered is not equi-
table. They object to complainant having one-half of the
net rents and income and the full charge and control of
the business block. They object to being required to
relinquish their title to the homestead, though they do
not object to its occupancy during his lifetime by the
complainant, if he will in fact occupy it. They insist
that too large a portion of the income already collected is
given to complainant; that the lien provided them by the
sixth paragraph does not provide them adequate security.
They also make other minor claims, which need not be
stated. It is difficult to work out what will be certainly
equitable and just, but the trial judge seems to have made
a careful effort to accomplish this result. The decree he
has made practically makes a new contract for the par-
ties, and this the court is not authorized to do. As before
stated, we think the deeds that were made are good
deeds, and convey the title which was intended to be con-
veyed. It is apparent, however, that conditions have
so changed that the harmonious home which it was ex-
pected would result cannot be had. It is equally appar-
ent that the needs of the complainant should be met, and
that the litigation should be ended. The complainant
should be allowed the use of the homestead if he will use
it; if he will not do so, he should have its net rental value.
The buildings should be insured.

We can see no good reason why Jared Snyder should
not be put in charge of the real estate, as was contem-
plated by the parties, subject to an accounting to the court
from time to time. We think also that the proportion of
the net rents and income given to the complainant from

the Root block as provided in paragraph 1 of the decree is too large, and that complainant should take but one-third thereof. We also think he should take but one-third of the net amount of moneys found by the fifth paragraph of the decree to be in Mr. Root's hands.

The decree may be modified in these respects. The defendants will recover costs of this court.

OSTRANDER, McALVAY, BROOKE, and BLAIR, JJ., concurred.