DOLBY *v.* STATE HIGHWAY COMMISSIONER.

1. APPEAL AND ERROR—RECORD.

In suit involving construction of a deed, a copy of which does not appear in the record, Supreme Court is confined to such quotations as appear in the record, the opinion of the trial judge and briefs of the parties.

2. DEEDS—FEE UPON CONDITION SUBSEQUENT.

Clause in deed of land 35 to 45 feet wide and 1,400 feet long providing that ''said strip of land is to be used for railroad purposes only, and ceasing to be used for such purposes, shall revert to said parties of the first part, their heirs or assigns'' *held,* to create a fee subject to divestment, a fee upon condition subsequent.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

A mere statement of a position without argument and citation of authority in support thereof is insufficient to present the matter for consideration of an appellate court (Court Rule No. 67 [1933]).

4. SAME—QUESTIONS REVIEWABLE—BRIEFS—EVIDENCE.

Effect of failure of grantee of fee upon condition subsequent to use land for purpose granted, which matter is not briefed, and claim of adverse possession, mentioned in plaintiffs' bill of complaint but not proved, are not considered on appeal in suit to establish title in plaintiffs (Court Rule No. 67 [1933]).

5. DEEDS—ASSIGNMENT OF RIGHT OF REVERTER BEFORE BREACH OF CONDITION SUBSEQUENT.

Attempt of grantor of fee upon condition subsequent to assign his right of reverter before breach of condition not only failed to effect assignment but extinguished the right.

6. COURTS—OVERRULING PREVIOUS DECISIONS.

Before a court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided but also that less injury will result from overruling than from following it.

7. SAME—RULES OF PROPERTY.

A recognized rule of property ought not to be overturned without the very best of reasons.

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ABANDONMENT.

Claim of mutual mistake in a deed, not raised nor referred to in original or amended bill of complaint, trial court's opinion nor briefs *held*, abandoned.

9. DEEDS—FEE UPON CONDITION SUBSEQUENT—EVIDENCE.

Record in plaintiffs' suit to establish title in them as to strip of land conveyed by deed vesting grantee with fee upon condition subsequent *held*, to show that subsequently executed mortgages merely recognized previous conveyance of fee from grantor to grantee.

WIEST, C. J., and SHARPE and POTTER, JJ., dissenting.

Appeal from Washtenaw; Moll (Lester S.), J., presiding. Submitted October 15, 1937. (Docket No. 52, Calendar No. 37,074.) Decided April 4, 1938.

Bill by Horace Dolby and wife against State Highway Commissioner and others for an accounting, an

injunction, and to determine title to real estate. Bill dismissed. Plaintiffs appeal. Affirmed.

*Robert J. Peretto* and *E. Samuel Taylor*, for plaintiffs.

*Raymond W. Starr*, Attorney General, and *Edmund E. Shepherd*, Assistant Attorney General, for defendants.

Bushnell, J. In 1912 plaintiffs Dolby and wife conveyed by warranty deed to F. W. Brooks, trustee, his successors and assigns, a strip of land 1,400 feet in length, more or less, varying in width from 35 to 45 feet, lying north of and adjacent to the fence of the north line of the highway and located in the east half of the southwest quarter of section one, in the township of Ypsilanti, Washtenaw county. This deed contained the following provision:

"Said strip of land shall be used for railroad purposes only and ceasing to be used for such purposes shall revert to said parties of the first part, their heirs or assigns."

In 1916, Dolby and wife, by warranty deed, conveyed to plaintiffs Parke and wife all of the east half of the southwest quarter of section 1, et cetera, excepting a parcel in the southwest corner thereof, containing about 16 rods, and excepting the strip of land deeded to Brooks. The Dolby-Parke deed contained the following provision:

"Said strip of land is to be used for railroad purposes only, and ceasing to be used for such purposes, shall revert to said second parties, their heirs and assigns."

We might state here that the record does not contain copies of the deeds in question and we are

confined to quotations in the record, the opinion of the trial judge and briefs of the parties, which are somewhat conflicting.

In 1926, Parke and wife conveyed certain lands to Dolby and wife which may or may not be the same as those conveyed in 1916, but the conveyance of 1926 does except a strip of land north of the fence on the north line of the highway—"extending across the entire front of the land of said parties of the first part on section one, said strip of land being 45 feet in width."

This deed contained the following provision:

"Said strip of land is to be used for railroad purposes only, and ceasing to be used for said purposes, shall revert to said second parties, their heirs and assigns."

In 1930, Brooks conveyed the strip of land in question to Grover C. Dillman, then State highway commissioner.

Plaintiffs Dolby and wife, by bill of complaint filed November 25, 1931, and amended bill filed May 7, 1932, claim that title reverted to themselves by reason of non-use of the strip for railroad purposes and by reason of the terms of the conveyance of 1930. They also claim title by adverse possession and charge that defendants State highway commissioner and Washtenaw county road commissioners and their contractor are interfering with their peaceful possession of the strip. They seek a decree establishing title in themselves, free of the claims of Brooks, his successors and assigns. Just how the remaining plaintiffs, whose names are printed on appellants' brief, come into the case we are not informed, but, whatever their interests may be, they have not joined in the prosecution of this appeal.

The trial court, by decree entered August 4, 1932, dissolved the temporary injunction previously issued and dismissed plaintiffs' bill of complaint.

While the language used in the various conveyances may differ somewhat, reverter clauses in deeds are generally susceptible of classification. Appellants apparently take the position that the provisions before us created a determinable fee or "conditional limitation." It would be more accurate to describe them as creating a fee subject to divestment by re-entry for breach of condition; in other words, a fee upon condition subsequent. *Weber* v. *Ford Motor Co.*, 245 Mich. 213; *Rhines* v. *Consumers Power Co.*, 259 Mich. 236; *Avery* v. *Consumers Power Co.*, 265 Mich. 696.

In ascertaining the rights of the parties, we will not determine whether Brooks' or his *cestui que trust's* failure to use the strip for railroad purposes between 1912 and 1916 constituted a breach of condition, inasmuch as this point, although presented in the amended bill of complaint and restated by appellants in their statement of questions involved, is not briefed. A mere statement of a position without argument and citation of authority in support thereof is insufficient to present the matter for the consideration of an appellate court. Court Rule No. 67 (1933), and *Johns* v. *Wisconsin Land & Lumber Co.*, 268 Mich. 675. The same observations apply to plaintiffs' claim of adverse possession which, although mentioned in the amended bill of complaint, is not supported by proof.

Plaintiffs' claim that no attempt was made in the deed of 1916 to assign the right of re-entry to Parke and wife would be correct if the language in this deed had gone no further than to except the strip previously conveyed to Brooks. See *Reynolds* v.

*Gaertner,* 117 Mich. 532. But grantors did more. They said: "said strip of land * * * ceasing to be used for said purposes, shall revert to said second parties, their heirs and assigns."

As the deed thus stands in this record, the language constituted an attempt to assign the right of re-entry; and not only did the assignment fail as to Parke and wife but the right was thereby extinguished. *Halpin* v. *Rural Agricultural School District,* 224 Mich. 308; *County of Oakland* v. *Mack,* 243 Mich. 279; *Fractional School District* v. *Beardslee,* 248 Mich. 112.

Plaintiffs contend that our holding in the *Halpin Case* is erroneous and the definition of executory limitation given therein is incorrect.

Notwithstanding attacks made upon the rule stated in *Halpin* v. *Rural Agricultural School District, supra,* it has been adhered to in *County of Oakland* v. *Mack, supra, Fractional School District* v. *Beardslee, supra,* and *Avery* v. *Consumers Power Co., supra.*

This court has not blindly adhered to the doctrine of *stare decisis.* See *Hilt* v. *Weber,* 252 Mich. 198, 223 (71 A. L. R. 1238). But the situations in the various "relicted land" cases there discussed were altogether different from those presented in the several "reverter" cases, *supra.*

In 1931, the legislature of this State abolished the "reverter" rule as to subsequent conveyances by the enactment of Act No. 219, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 12966–2), which reads:

"The reversionary interest in lands conveyed on a condition subsequent may be granted, conveyed, transferred or devised by the owner of such interest, and by the subsequent grantees or devisees thereof, either before or after the right of re-entry becomes

effective: Provided, That this act shall not affect any such interest created before it takes effect."

This legislative enactment is an adequate solution of the "reverter" problem, and little argument can be advanced in support of a "judicial repeal" of the proviso of the quoted act by overruling the *Halpin Case*. Certainly far less damage will result from the operation of the proviso of the 1931 statute than from a determination that the *Halpin Case* was wrong in principle and should be overruled.

In *McEvoy* v. *City of Sault Ste. Marie,* 136 Mich. 172, 178, the court said:

"Before this court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it."

A recognized rule of property ought not to be overturned without the very best of reasons. *Lewis* v. *Sheldon,* 103 Mich. 102; *Pleasant Lake Hills Corp.* v. *Eppinger,* 235 Mich. 174.

Plaintiffs attempted to show that the use of the word "second" in this conveyance was an error; that the word should have been "first." The opinion of the trial judge omitted consideration of this claim of mutual mistake, and properly so, because it is neither raised nor referred to in the original or amended bill of complaint. Moreover, this claim is not pursued in the briefs and, therefore, must be held to have been abandoned.

Appellant urges that we construe the language of the deed of 1916 in connection with certain purchase money mortgages from Parke to Dolby, one of which mortgages was executed simultaneously with said deed. They argue that the express exclusion of the

strip from these mortgages shows that Dolby and wife never intended to assign their right of re-entry to Parke and wife. However, an examination of the record indicates that the exclusion of the strip from the mortgages is a recognition of the previous conveyance of the fee title in the same by Dolby to Brooks.

The decree dismissing plaintiffs' amended bill of complaint is affirmed, with costs to appellees.

BUTZEL, CHANDLER, and NORTH, JJ., concurred with BUSHNELL, J.

NORTH, J. (concurring). Since the question was first presented to this court it has been the law of this State that an attempt by the possessor of a conditional right of reverter to convey the same before breach of condition does not convey any interest in the realty to the grantee named, because the right before breach cannot be conveyed; and further such an attempt to convey extinguishes the right itself. This is a law of property and should not be changed by the court in the absence of compelling reasons. Lewis v. Sheldon, 103 Mich. 102. In this jurisdiction the rule was first announced in Halpin v. Rural Agricultural School District, 224 Mich. 308, and it has been reiterated in each of the following cases: County of Oakland v. Mack, 243 Mich. 279; Fractional School District v. Beardslee, 248 Mich. 112; Avery v. Consumers Power Co., 265 Mich. 696.

I cannot assent to the conclusion that the rule as judicially adopted and consistently followed in this State is without support in respectable authorities or in reason. Regardless of the correctness or incorrectness of the statement that such a conditional or contingent right of reverter could not at common law be conveyed by the holder of the right, there can

be little doubt that such was and is the understanding of the common law by many of the courts of this country. In the opinion of Mr. Justice POTTER in this case he has quoted or cited several of the courts which have stated such was the common law. See *Cloyes* v. *Beebe,* 14 Ark. 489; *Moore* v. *Sharpe,* 91 Ark. 407 (121 S. W. 341, 23 L. R. A. [N. S.] 937); *Young* v. *Young,* 89 Va. 675 (17 S. E. 470, 23 L. R. A. 642); *Shell Petroleum Corp.* v. *Hollow* (C. C. A.), 70 Fed. (2d) 811. Even after the passage of the Statute of Henry 8 (32 Henry 8, chap. 34), the rule as above stated was adhered to in English courts. See *Warren* v. *Lee,* 2 Dyer, 126b (73 Eng. Rep. 276), wherein it is said:

"But when the condition is once annexed to a particular estate, and then by another deed the reversion is granted by the maker of the condition, there the condition is gone, *causa patet.*"

Further the rule as first above stated is by no means without respectable support in other jurisdictions, some of such decisions being of very recent date. *Dyer* v. *Siano,* — Mass. — (11 N. E. [2d] 451); *O'Connor* v. *City of Saratoga Springs* (1933), 146 Misc. 892 (262 N. Y. Supp. 809); *Underhill* v. *Railroad Co.,* 20 Barb. (N. Y.) 455; *Rice* v. *Railroad Corp.,* 12 Allen (94 Mass.), 141; *Craig* v. *Inhabitants of Franklin County,* 58 Me. 479; *Wagner* v. *Wallowa County,* 76 Ore. 453 (148 Pac. 1140, L. R. A. 1916 F, 303); *Board of Education of Humphreys County* v. *Baker,* 124 Tenn. 39 (134 S. W. 863); *Stevens* v. *Railway Co.* (Tex. Civ. App.), 169 S. W. 644. Text writers of repute have also stated the rule as prevailing law. Tiedeman, Real Property (4th Ed.), § 207; 2 Washburn, Real Property (6th Ed.), § 959; 2 Reeves, Real Property, p. 1018; 3 Thompson, Real

Property, § 2083; and 1 Tiffany, Real Property (1st Ed.), § 75, which we quote:

"Nor can the right to enforce a forfeiture, or, as it is usually called, the right of re-entry, be, at common law, assigned or transferred by the grantor to a third person before entry for the breach, this being in conformity with the common law rule that 'nothing in action, entry, or re-entry can be granted over.'

"These restrictions as to the persons able to take advantage of a breach and the inability to assign the right have been generally recognized in this country, and not only will an attempted assignment of the right of re-entry be void, but it will have the effect of destroying the grantor's right to enforce the condition, which is thereafter in effect nonexistent."

It cannot be said that none of the courts have expressed a reason justifying the adoption of the rule. Regardless of whether the reasons are satisfactory or convincing, it may be noted that in some jurisdictions the rule that the contingent right of reverter is extinguished by an attempt to convey before breach, is based upon a waiver of or an estoppel against the right to claim upon the happening of the contingency after the holder has sought to dispossess himself thereof. *Wagner* v. *Wallowa County, supra; Rice* v. *Railroad Corp., supra.* It has also been stated that the forfeiture of the right by the holder's attempt to convey before breach of condition is in the nature of a penalty imposed in consequence of the party's attempt to make a conveyance in violation of law. *Rice* v. *Railroad Corp., supra.* In Tennessee the court has said that the unlawful attempt to convey results in a relinquishment of the right of re-entry and is an election not to exercise the right. *Board of Education of Humphreys County* v. *Baker, supra.* Former consideration of the rule by this court has been accompanied by reasons assigned

in support thereof.  We have approved of the above quotation from Tiffany on Real Property, and as further reasons in support of the rule have said:

"Conditions subsequent are not favored by the courts, nor by statute (3 Comp. Laws 1915, § 11564 [3 Comp. Laws 1929, § 12966]).  Frequently the condition survives any substantial or actual benefit to the grantor and his heirs and becomes an onerous burden upon the grantee and his assigns, whose prayer for relief is appealing.  This, in some degree, may account for the arbitrary rule that an attempt to convey destroys the right.  And the author of a note in 38 A. L. R. 1112 states with ample citation of cases:

"'It may also be noted in this connection that, wherever the point has directly arisen, it has been held that the effect of a subsequent conveyance by the grantor of the property, subject to the condition, is to destroy the condition.'

"In a note L. R. A. 1916 F, 311, 312, there is criticism of the rule, but the author says:

"'All the American courts which have had occasion to pass upon the question have, practically without dissent, decided it in the same way.'

"The rule is settled in this jurisdiction.  *Halpin* v. *Rural Agricultural School District, supra.*" *County of Oakland* v. *Mack, supra.*

Because the law as previously announced by this court is a rule of property and because it has ample support in other jurisdictions, it ought not to be set aside lightly.  Especially is this true (even if it be conceded that the rule is not any too well grounded in reason), since comparatively recently the legislature has definitely established the law in this State, making such an interest in land transferable by deed or will.  Act No. 219, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 12966–2).  The importance of not changing the rule of property as judicially adopted in this State is readily revealed by the cir-

cumstances of the instant case. It is to be presumed that the defendant who purchased the parcel of land involved knew and relied upon the law as it had been plainly and repeatedly announced by this court. As hereinafter pointed out, if the previously judicially announced law is adhered to defendants will prevail in this case; but if we depart from the established law of this State, defendants will be defeated and the purchaser deprived of the acquired property rights.

Justice POTTER states that the conditional interest here in suit may lawfully be conveyed under 3 Comp. Laws 1929, § 12955. This, to say the least, is debatable. If, as some courts have held (*Wagner v. Wallowa County, supra*), a reversionary right contingent on a condition subsequent is nothing more than an unassignable chose in action and is not an interest in land (to the same effect, see Tiedeman, Real Property [4th Ed.], § 207), the plaintiffs in the instant case cannot benefit by 3 Comp. Laws 1929, § 12955, which provides for the conveyance of expectant estates. This is true because the statute is applicable only to expectant estates in real property. This statute is said to have been copied from a like statutory provision in the State of New York. See 1 N. Y. Rev. Stat. 1829, 725, § 35. The New York court has held that its statute is not applicable to a conditional right of reverter; and that notwithstanding the statute an attempt by the possessor to convey such right prior to the breach of condition extinguishes the right. *Underhill* v. *Railroad Co., supra.*

If we are to adhere to the rule as announced in the *Halpin Case* and other decisions of this jurisdiction in accord therewith, what then is the result to be reached in the instant suit? From a review of

the record it convincingly appears that Mr. and Mrs. Dolby in 1916 and before there was any breach of the condition which resulted in a reverter, attempted to convey their contingent reversionary rights. Thereby such rights were extinguished, and Brooks, trustee, became vested with an absolute and unconditional fee title to the parcel. By mesne conveyances this title was vested in defendant Dillman, as State highway commissioner. As against defendants, plaintiffs have established no rights under their bill to quiet title in themselves to the parcel in suit. Such was the effect of the holding in the circuit court. I concur with Mr. Justice BUSHNELL in affirmance, with costs to appellees.

POTTER, J. (*dissenting*). The trial court clearly and concisely stated the facts and the reason for the decree entered dismissing the bill of complaint. His language is adopted, as follows:

"This is a bill to restrain defendants from selling, assigning, transferring, incumbering, a certain strip of land along the north side of Michigan avenue, or from removing or damaging trees, shrubs, etc., located on said land, and also praying that the court may decree that F. W. Brooks, trustee, and his successors and assigns have no interest in said lands by reason of not having used same for the purpose for which they were granted, and that plaintiffs be decreed to be the owners thereof, freed from all rights of the said Brooks, trustee, his successors or assigns.

"Horace L. Dolby and Alice A. Dolby, his wife, were the owners of 80 acres of land in the township of Ypsilanti, Washtenaw county, described in paragraph 1 of the bill. This land had a frontage of some 1,400 feet on the north side of Michigan avenue. Dolby and wife by warranty deed, dated Oc-

tober 22, 1912, conveyed to F. W. Brooks, trustee, a strip of land lying next north of and adjacent to a fence on the north side of the highway known as Michigan avenue or Chicago road, and extending across the entire front of lands of said parties of the first part on section 1, Ypsilanti township, from the west (east?) line of land owned by Etta Dale on the west, said strip of land being 35 feet in width throughout 400 feet of its length, measured from the east line thereof, and 45 feet in width through the remaining portion of its length, the entire length of said strip being 1,400 feet more or less. Said strip of land shall be used for highway purposes only, and ceasing to be used for such purposes shall revert to said parties of the first part, their heirs or assigns. As a part and further consideration for this conveyance said second party shall erect a woven wire fence of good quality between the lands of said parties of the first part and the tracks of any railroad which may be constructed upon said right of way, together with suitable crossing and gate at the place designated by first parties.

"Said first parties reserve all buildings on said premises provided the same are removed within one year, at his own sole cost and expense, otherwise the same to be and to remain the property of said second party.

"On May 26, 1916, by warranty deed, Horace L. Dolby and Alice, his wife, conveyed to Archie B. Parke and Clara E. Parke, his wife, all the land described in paragraph 1 of the bill, excepting the strip of land theretofore deeded by Dolby and wife to Brooks, trustee, 'said strip of land is to be used for railroad purposes only, and ceasing to be used for such purposes shall revert to said second parties, their heirs and assigns, said premises conveyed containing 80 acres of land, more or less.'

"Thereafter and on July 21, 1925, Parke and wife deeded so-called parcel number two to Dolby and wife, and also all that parcel of land lying between

the north line of Michigan avenue and the south line of the Burbank two-acre parcel. Said last parcel is subject to the rights of F. W. Brooks, trustee, or his assigns in said strip of land.

"Later, on July 14, 1926, Parke and wife by warranty deed conveyed to Dolby and wife so-called parcel three, excepting a strip of land lying next north of and adjacent to the fence on the north side of the highway known as Michigan avenue, and extending across the entire front of the lands of said parties of the first part on section 1, the said strip of land being 45 feet in width. Said strip of land is to be used for railroad purposes only, and ceasing to be used for said purposes shall revert to said second party, their heirs and assigns, said premises being a part of the east half of the southwest quarter of section 1.

"It appears therefore that Dolby and wife and Parke and wife, together with one Lincoln, are claiming title to the entire strip extending the entire width of the original Dolby property on the south side thereof and adjoining Michigan avenue to the north. The defendants claim title by successive conveyances through F. W. Brooks, trustee.

"It is the claim of plaintiffs that the conveyance to Brooks conveyed a base fee subject to being divested on a contingency, and that such a contingency occurred when the property was subsequently deeded to the highway commissioner, which conveyance showed an ultimate abandonment of the strip in controversy for railroad purposes; also that the Dolbys had always excepted the strip in controversy in conveyances from themselves, and that the property reverts to Dolby. It is also claimed that Brooks, trustee, and his assigns did nothing to exercise the right of ownership, that there had been an abandonment of the strip by Brooks and his assigns, and that pursuant to right of ownership Mr. Dolby had paid the 1929 and 1930 taxes.

"The defendants contend that in the conveyance from the Dolbys to Parke and wife (warranty deed dated May 26, 1916), there was an attempt to convey the strip in controversy, which attempt extinguished any right of reverter in the Dolbys.

"An examination of this conveyance leads the court to a conclusion in accordance with this theory. While the language used excepted the strip of land lying next north of and adjacent to the fence on the north line of the highway known as Michigan avenue, the remaining language, namely:

" 'Said strip of land is to be used for highway (railroad?) purposes only, and ceasing to be used for such purposes shall revert to said second parties, their heirs and assigns, said premises conveyed containing 80 acres of land, more or less,' makes it appear that it was Dolby's intent to convey a reverter interest in the event of a breach of a condition subsequent, in other words 80 acres of land, more or less, together with a reverter was intended to be conveyed.

"The deed from Dolby and wife to F. W. Brooks, trustee, was a conveyance in fee of the entire strip, creating a condition subsequent. This conclusion, in the opinion of the court, brings the instant case within the holding of *Halpin* v. *Rural Agricultural School District*, 224 Mich. 308, where the distinction between condition subsequent and conditional limitation is discussed, and which case holds that an attempt on the part of the grantor (Dolbys) to convey a possibility of reverter before the condition is broken extinguishes the right of himself and heirs to re-enter after the condition is broken."

From a decree dismissing plaintiffs' bill and dissolving the injunction, plaintiffs appeal.

1. The rule, first announced in this State in *Halpin* v. *Rural Agricultural School District*, 224 Mich.

308, and subsequently followed, is relied upon as controlling this case.

The question recurs, whether the *Halpin Case* was erroneously or correctly decided.

2.   It is contended that the rule of *Halpin* v. *Rural Agricultural School District* was the rule of the common law. The common law was brought to this country by the English colonists who settled at Jamestown in 1607. What was brought was not only the common customary law of England, but the law relating to land tenure as modified by English statutes of general operation up to that time, subject to some modifications not here important. *Penny* v. *Little,* 3 Scam. (4 Ill.) 301; *Crake* v. *Crake,* 18 Ind. 156; *Lavalle* v. *Strobel,* 89 Ill. 370; 1 Kent's Commentaries (14th Ed.), pp. 472, 473; 1 Select Essays in Anglo-American Legal History, pp. 367–430; 21 Am. Law Reg. (N. S.) 553.

(a) The ordinance of 1787, for the government of the territory northwest of the Ohio river, provided the inhabitants of the territory should always be entitled to judicial proceedings according to the course of the common law. This ordinance was the organic law of the Northwest Territory and of Michigan Territory. *Swan* v. *Williams,* 2 Mich. 427. It was, with some exceptions, afterward extended by Congress to Mississippi Territory. The common law there referred to was the common law of England. *State* v. *Cawood,* 2 Stew. (Ala.) 360; *Barlow* v. *Lambert,* 28 Ala. 704 (65 Am. Dec. 374). By act of July 14, 1795, the governor and judges of the Northwest Territory enacted that the common law of England and all statutes of the British parliament made in aid of the common law prior to the fourth year of King James 1 (that being the date of the English settlement at Jamestown), of a general

nature, and not local to the kingdom, should be adopted in that territory. After the surrender of the British posts in what is now Michigan by Great Britain to the United States, Michigan came under the ordinance of 1787 as a part of the Northwest Territory and later as a part of Indiana Territory.

(b) Michigan Territory was created and organized in 1805. The governor and judges of Michigan, by act of September 16, 1810, attempted to repeal all French and French-Canadian law in the territory (this had already been done by the ordinance of 1787), repeal all English statutes applicable to Michigan, though the governor and judges had no power of repeal, and their attempted action was ineffective so far as the English statutes included in the common law were adopted by the ordinance of 1787. The power of repeal granted to the governor and judges by the act of congress of May 8, 1792, to repeal (their laws made by them) was an implied exclusion of their right to repeal in cases not enumerated. As to the laws of the Northwest Territory and of Indiana Territory, it is probable the right of repeal existed under the act of congress of May 8, 1792. It was unnecessary to repeal the purported territorial laws enumerated for they had been declared unconstitutional. *McGarvin* v. *Wilson* (Mich. Terr. 1809), 36 Mich. Pion. & Hist. Soc. Coll. p. 363; *In re Colhoun,* 18 Mich. Law Rev. p. 21; *In re Hoffman's Will,* 18 Mich. Law Rev. p. 27. The common law, including the English statutes of general application, made the law of the territory by the ordinance of 1787, continued to be the law of Michigan notwithstanding any attempted repeal by any territorial legislative body. *Mercer* v. *Williams,* Walk. Ch. (Mich.) 85; *Stout* v. *Keyes,* 2 Doug. (Mich.) 184 (43 Am. Dec. 465); *May* v. *Rumney,* 1 Mich. 1; *Swan*

v. *Williams, supra; Lorman* v. *Benson,* 8 Mich. 18
(77 Am. Dec. 435); *Crane* v. *Reeder,* 21 Mich. 24 (4
Am. Rep. 430); *Coburn* v. *Harvey,* 18 Wis. 147; *Pollard* v. *Hagan,* 3 How. (44 U. S.) 212; *Board of
Trustees for Vincennes University* v. *Indiana,* 14
How. (55 U. S.) 268. In *Re Lamphere,* 61 Mich. 105,
attention was called to the enactment of the governor and judges on September 16, 1810, above mentioned. But this attempted legislation so far as it
affected the common law, as modified by English
statutes inherent in the term "common law" as
used in the ordinance of 1787, was plainly invalid.
The common law, as adopted by the ordinance of
1787 and made applicable to Michigan, consisted not
only of the customary common law of England, but
that law as modified by applicable statutes prior to
our separation from Great Britain.

3. In *Halpin* v. *Rural Agricultural School District,* the rule announced is that a possibility of reverter is not assignable by the grantor except to the
holder of the conditional fee. No grant of it may
be legally made to another. It will not pass by any
conveyance to any other person. Any attempt to
alienate it to any one but the holder of the conditional fee is absolutely void and conveys nothing.
Though the attempted grant of this possibility of
reverter to a third person is void, it is in effect fully
operative against the grantor in favor of the
grantee of the conditional fee. It extinguishes the
possibility of reverter and its effect is to convey an
absolute fee to the holder of the conditional fee
though no conveyance of it has been made to him by
the grantor. In effect, the case holds the attempt
to grant the possibility of reverter to a third person operates as a grant of the possibility of reverter
to the holder of the conditional fee, merges such

possibility with the conditional fee, extinguishes the possibility of reverter, and converts the conditional fee to a title in fee simple absolute. Justice BIRD, in *Halpin* v. *Rural Agricultural School District,* was not impressed with the rule that an attempt to convey a reverter attached to a condition subsequent extinguishes it; and, in support of what seems to have been his opinion as to this rule, he quoted from a note to *Wagner* v. *Wallowa County,* 76 Ore. 453 (148 Pac. 1140), in L. R. A. 1916 F, 303, 311, where the editor says one "might wonder by what legerdemain a right, created by solemn compact between grantor and grantee, had been made to vanish into thin air. It would puzzle him to understand how an unsuccessful attempt to convey can have the effect of destroying the thing that is not conveyed. 'How is it,' he would say, 'that what does not pass does not remain?' His bewilderment would only be increased if he were informed that all the American courts which have had occasion to pass upon the question have, practically without dissent, decided it in the same way."

*Clapp* v. *Wilder,* 167 Mass. 332 (57 N. E. 692, 50 L. R. A. 120), holds the possibility of reverter, upon the death of the holder thereof, passes to his heirs or devisees, whereas *Vaughan* v. *Langford,* 81 S. C. 282 (62 S. E. 316, 128 Am. St. Rep. 912, 16 Ann. Cas. 91), holds such possibility of reverter does not pass by will because at the moment of death the possibility of reverter passes to the heirs of the grantor in the conditional deed,—which reason would prevent real estate, or any interest therein, from passing by devise under any circumstances. *Upington* v. *Corrigan,* 151 N. Y. 143 (45 N. E. 359, 37 L. R. A. 794), quotes from *Nicoll* v. *Railroad Co.,* 12 N. Y. 121, which held that 32 Henry 8, chap. 34,

which permitted the assignment of a right of entry in case of grants, or leases in fee, reserving rents, and of leases for lives or for years, says:

"There was a reason for the statutory change in the particular cases mentioned; for in them the grantor had an interest independent of the possibility of reverter. * * * But where a fee simple, without a reservation of rents, is granted upon a condition subsequent, as in this case, there is no estate remaining in the grantor. There is simply a *possibility of reverter*, but that is no estate. There is not even a possibility coupled with an interest, but a bare possibility alone."

4. Gray draws a distinction between a right of entry for condition broken and a possibility of reverter. Gray, Rule Against Perpetuities (3d Ed.), § 31. Pollock & Maitland indicate the distinction between a reversion and a possibility of reverter is not well established. 2 Pollock & Maitland's History of English Law, p. 23. Act No. 219, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 12966–2), which reversed as to future conveyances the rule of *Halpin v. Rural Agricultural School District*, speaks of a "reversionary interest."

(a) No reason has been advanced and none has been apparent to legal antiquarians, ancient or modern, for the existence of the rule declared in *Halpin v. Rural Agricultural School District*, that an attempt to alienate that which is inalienable has the effect claimed for it. No English statute declares such rule. No decision of any English court can be pointed to as the basis of any such conclusion. If we say the reason was that the attempt to alienate that which was inalienable was penalized by its forfeiture, we say that which has no support either in the statute or common law of England. Forfeitures

are not favored in law, and will not ordinarily be enforced in equity.

"No good reason is perceived why a right of entry for breach of condition should not be alienable nor why any distinction as to alienability should be drawn between it and the possibility of reverter." 3 Simes' Law of Future Interests, § 716.

(b) The only basis that has been pointed out for this assumed rule is the statement in 1 Sheppard's Touchstone (1648) (7th Ed.), p. 158, and reiterated in 5 Viner's Abridgment (1741), title Condition, p. 306. It is said:

"If one make a feoffment in fee of land upon condition, and after and before the condition broken he doth make an absolute feoffment, or levy a fine of all or part of the land to the feoffee, or any other; by this the condition is gone and discharged for ever, (except such fine is for further assurance)." 1 Sheppard's Touchstone (7th Ed.), p. 158.

No authority is cited to support this statement.

"When condition is once annexed to a particular estate, and after by *other deed* the reversion is granted by the maker of the condition, now the condition is gone." 5 Viner's Abridgment, p. 306, citting *Warren* v. *Lee,* 2 Dyer, 126b, 127a (73 Eng. Rep. 276).

In *Warren* v. *Lee, supra,* it is said:

"When the condition is once annexed to a particular estate, and then by another deed the reversion is granted by the maker of the condition, there the condition is gone, *causa patet.*"

It does not appear from this report whether this language was used by counsel, the court, or only by the reporter.

If there ever was any reason for the rule asserted in *Halpin* v. *Rural Agricultural School District,* such reason has ceased to exist; and when the reason for a common-law rule ceases to exist, the rule fails, for reason, as said by Lord Coke, is the basis of the common law.

5.   Land holding, not land owning, was the characteristic of feudal land tenure.   Plucknett's History of the Common Law, p. 311.

The central idea in the conveyance of land titles in the early English common law was seizin. Seizin was possession.   2 Pollock & Maitland's History of English Law, p. 29; Challis' Law of Real Property, p. 76.   One could not deliver possession to another of what a third person possessed.   A right of entry for condition broken could not be conveyed because there could be no livery of seizin.   It was inalienable.   Seizin was the basis of inheritance.   The landowner who had not been in possession had no right which he could leave to his heirs.   3 Select Essays in Anglo-American Legal History, p. 596.   One who conveyed real estate to a third person and delivered the possession or seizin thereof vested the grantee with a title good as against everyone except ''those who have better because older title.''   3 Select Essays in Anglo-American Legal History, p. 600.   The termor or tenant could convey to another a right which he never had, seizin being no more nor less than possession.   ''The termor's tortious feoffment is no anomaly.''   3 Select Essays in Anglo-American Legal History, p. 601.

''Our ancestors got into very odd notions on these subjects, and were induced by particular causes to make estates grow out of wrongful acts.''   *Goodright* v. *Forester,* 1 Taunt. 578, 613 (127 Eng. Rep. 958).

The theory recognized in *Halpin* v. *Rural Agricultural School District,* that there could be no conveyance of a mere possibility of reverter, is a survival of the common-law conception of seizin. There could be no valid conveyance because there could be no livery of seizin. Lord Mansfield says:

"*Seisin* is a technical term to denote the completion of that investiture, by which the tenant was admitted into the tenure; and without which, no freehold could be constituted or pass." *Taylor* v. *Horde* (1757), 1 Burr. 60, 108 (97 Eng. Rep. 190).

Legislation in England and America has "left us little but the names of *feoffment, seisin, tenure and freehold;* without any precise knowledge of the *thing originally signified,* by these sounds." *Taylor* v. *Horde, supra,* 108.

6. (a) If by the common law there could be no assignment of the right of re-entry for condition broken, and the ordinance of 1787 made the common law, as modified by English statutes prior to the settlement of America, the law in force in the Territory of Michigan, and the Constitution of 1835 continued the territorial laws in force not repealed by the Constitution, then by the early law of the State of Michigan there could be no valid conveyance of land by one not in the actual possession of the same. This was the established rule. *Bruckner* v. *Lawrence,* 1 Doug. (Mich.) 19; *Godfroy* v. *Disbrow,* Walk. Ch. (Mich.) 260; *Hubbard* v. *Smith,* 2 Mich. 207. This was changed by the Revised Statutes of 1846.

Section 13278, 3 Comp. Laws 1929, provides:

"Conveyances of lands, or of any estate *or interest therein,* may be made by deed, * * * without any other act or ceremony whatever."

Section 13283, 3 Comp. Laws 1929, provides:

"No grant or conveyance of lands *or interest therein,* shall be void for the reason that, at the time of the execution thereof such lands shall be in the actual possession of another claiming adversely."

(b) At the early English common law, anyone in the actual possession of lands could make livery of seizin to his grantee. An executor in possession of land belonging to the heirs of deceased could convey a fee. One could convey a larger estate than he actually had solely because he could make livery of seizin. Life tenants could convey a fee. This common-law rule was ended in Michigan by statute (3 Comp. Laws 1929, § 13280), which provides:

"A conveyance made by a tenant for life or years, purporting to grant a greater estate than he possessed or could lawfully convey, shall not work a forfeiture of his estate, but shall pass to the grantee all the estate which such tenant could lawfully convey."

7. It seems to be established by Glanville and Hale, Fleta and Blackstone, that one could not, at early common law, dispose of real estate by will. Beames' Glanville's De Tractibus (Beal's Ed.), pp. 115, 135, 136, and notes. Wills of real estate were authorized by 32 Henry 8, chap. 1, and 34 & 35 Henry 8, chap. 5. The only reason why the possibility of a right of re-entry or possibility of reverter could not be devised at early common law was that no interest in real estate could be devised at early common law.

8. It is conceded even in *Halpin* v. *Rural Agricultural School District,* that the possibility of reverter retained by the grantor of lands on condition

subsequent, or of the right of re-entry for breach of condition broken, was a right pertaining to real estate which descended from the grantor to his heirs, and, by 3 Comp. Laws 1929, § 13478, it is not necessary one be seized of an interest in real estate in order to devise the same. The statute here in force permits a testator who is "entitled to *any interest therein descendible to his heirs*" to devise and dispose of the same by will. The possibility of a right of re-entry for breach of condition subsequent under the law as it is now established is an interest in real estate which descends to the grantor's heirs. It is such an interest in real estate as may be devised, and, being an interest in real estate, it may, under 3 Comp. Laws 1929, §§ 13278, 13283, be conveyed.

9. "Possibilities not coupled with an interest,— *mere* possibilities or expectancies,—which are not embraced within these statutes, are, according to the general course of decision, assignable in equity for a valuable consideration; and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest or possession. The explanation is sometimes given that the assignment operates as a contract by the assignor to convey the legal estate or interest when it vests in him, and that equity will specifically enforce such contract by decreeing a conveyance." 3 Pomeroy's Equity Jurisprudence (3d Ed.), § 1287, and cases cited.

The grantors herein had an exclusive right to be the beneficiaries of the right to re-enter in case of breach in the future of the condition subsequent in their deed by the grantee therein. This right was vested exclusively in the grantors, and like any other vested right was alienable by them, and their alienation, or attempted alienation, thereof did not

destroy it. It passed by their deed thereof. Assuming all that defendants claim, plaintiffs assigned for a valuable consideration a possibility. Equity will recognize and enforce it after a breach of condition subsequent by the conditional grantee.

By act of March 2, 1821, 1 Terr. Laws, p. 815, estates tail were abolished in the Territory of Michigan and the provisions of this statute were recognized and adopted by the Revised Statutes of 1846, chap. 62, § 3 (3 Comp. Laws 1929, § 12923). By act of February 26, 1821, 1 Terr. Laws, p. 796, entitled "An act to regulate the action of right and for other purposes," many changes in the common law were made, the more important of which were: abolishing the requirement of four knights girt with sword on the jury; establishing a jury of 16 men; abolition of trial by battle and of trial by grand assize, of fictitious summons and fictitious pledges of prosecution, of actual entry and of livery of seizin. The action lay to recover lands reverted and "in an action of right, the party recovering, shall recover on the merits, according to his, or their true right and title." Section 40, p. 805, of this act provided:

"*And be it further enacted,* That all right, benefit, remedy, relief and proceedings, and all injury, damage, wrong, loss or prejudice in favor of, or against any person or persons, by entry to recover *seizin* or claim in lieu of entry, or continual claim in lieu of entry, or continual claim; by bar from the right of entry being tolled, in consequence of a descent cast, or in consequence of peaceable possession for five years or for any other period of time, the period of sixty years excepted, or in consequence of not entering within twenty years or within any other period of time, after an entry by bar from not commencing an action within one year, or other period

of time after an entry; by bar from the right of entry being tolled in consequence of any alienation by any tenant; by bar from the right of entry being tolled in consequence of any alienation by any husband, seized in the right of his wife; by bar from the right of entry being tolled in consequence of any alienation on the part of any corporation sole; by any abatement on the part of any stranger, of the rightful possession, or of the freehold, or of the heir, or of the devisee, by any intrusion; by the intrusion on the part of any stranger after a particular estate of freehold is determined, before him, her or them in remainder or reversion; by entry to recover *seizin* in the case of the compulsive *disseizin* of a tenant and the substitution of another, with or without the consent, countenance or concurrence of the landlord or owner; by writ of entry *sur disseizin* in the *per,* or writ of entry *sur disscizin* in the *per* and *cui,* or writ of entry *sur disseizin* in the *post;* by writ of dower *unde nihil habet,* or writ of right of *dower,* or writ of admeasurement of *dower;* by writs of *dum fuit infra aetatem;* or of *dum fuit non compos mentis,* or of *cui invita,* or of *cui ante divortium,* or *ad communem legem;* or *in casu provisio;* or *in concilii casu;* or *ad terminum qui preteriit,* or *casu matrimonii prelocutii;* by writ of assize, or assize of *mort d'ancester,* or writ of *ayle,* or writ of *bisayle,* or writ of *tresayle,* or writ of *cosinage,* or writ of *nuper obiit,* or assize of *novel disseizin,* or writ of *redisseizin,* or writ of *post disseizin,* by action of *formedon,* or writ of *formedon* in the *discender* or writ of *formedon* in the remainder, or writ of *formedon* in the reverter; by bar from not commencing an action of *formedon* within twenty years, or within any other period of time; by writ of *quod ei deforceat,* or fine and concord *sur conizance de droit sur concessit,* or *sur done;* or common recovery on a writ of entry in the *post,* or default of the vouchee; by writ of *de rationabile parte;* by writ of *precipe*

*quod dominus remisit curiam,* or *precipe in capite,* or writ of right close, *secundam consuetudinem manerii,* or writ of *toll,* or writ of *pone,* or writ of *recordari facias;* by writ of *quare ejicit infra terminum;* by writ of assize of nuisance, or writ of *quod permiteat prosternere,* by writ of waste, or writ of *estrepement;* by writ *de consuetudinibus et observitiis,* or writ of *cessavit,* or writ of right *sur disclaimer,* or writ of *ne injuste vexes,* or writ of *mesne de medio,* or writ of *de secta,* and by writ of admeasurement of pasture, or writ of second surcharge, or assize of *novel disseizin sur* disturbance of common, or writ of *quod permittet* for deprivation of common, be and the same hereby are utterly abolished, abrogated and repealed, as to any future operation, in any degree whatsoever.''

This section abolished a multitude of common-law remedies, but it may well be doubted whether its enactment was in accordance with the provisions of the ordinance of 1787 guaranteeing to the inhabitants of the territory judicial proceedings according to the course of the common law. Whether valid or invalid, it was substantially re-enacted by the Revised Statutes of 1838, pt. 3, title 3, chap. 1, which changed the law of 1821 in but two important particulars: first, by providing for a jury of 12, instead of 16, men; and, second, in the re-enactment of section 40 of the statute of 1821 as section 32 of pt. 3, title 3, chap. 1, of the Revised Statutes of 1838 which changed the statute of limitations from 60 to 25 years.

By the Revised Statutes of 1846, chap. 108, § 2, the action of right was abolished and the personal action of ejectment substituted therefor "in the same cases in which a writ of right may now be brought," and by 3 Comp. Laws 1929, § 14904, an

action of ejectment may now be brought in the same cases in which a writ of right might formerly be brought to recover lands, tenements, or hereditaments, and by any person claiming an estate therein, in fee, or for life. No other changes were made by these statutes in the common-law rule; and the Constitution of 1908 keeps in force "the common law and the statute laws now in force, not repugnant to this Constitution." Const. 1908, sched. § 1.

By 3 & 4 Will. 4, chap. 105, § 3, it is provided a widow may have dower when her husband shall have been entitled to a right of entry or action in any land, the same as if he had recovered possession. 8 & 9 Vict. chap. 106, § 6, provides for the conveyance by deed of a right of entry, whether immediate or future, and whether vested or contingent, into or upon any tenements or hereditaments in England. By Will. 4 & 1 Vict. chap. 26, § 3, all interests in real estate to which deceased was entitled at the time of his death are devisable.

By the English statutes above mentioned, possibilities of reverter and possibilities of right of reentry for condition broken have been made fully alienable. Yet, in Michigan, where, since English and American occupation, the feudal system has been unknown, and knighthood never flowered, we have been, if the rule of *Halpin* v. *Rural Agricultural School District* was correct, helplessly "hogtied,"—in a land whose policy holds the free alienation of property to be one of its essential requisites,—while in England the senseless rule, real or pretended, has long since been discarded.

"In five States it has been held that, if an attempt is made to convey a right of entry for breach of condition which is unaccompanied by any reversion, the

interest of the conveyor is thereby forfeited. It is a little difficult to see why this should be so. If the interest is inalienable, why should the owner be penalized for an attempt at alienation which is a nullity? While a few statements are found supporting the position of these American cases in early English texts, there is no English decision to that effect. It is believed that the patent trend toward the alienability of future interests in recent years would probably lead a court in a jurisdiction where the question is still an open one to declare that an attempt at alienation of a right of entry for breach of condition does not forfeit the interest. Certainly, an attempt to alienate a possibility of reverter would not forfeit the interest even in jurisdictions where it is inalienable." 3 Simes' Law of Future Interests, § 717.

10. It is a long way from the medieval rule governing the transfer of folk land by feoffor to feoffee by livery of seizin, the basis of the rule of *Halpin* v. *Rural Agricultural School District*, to the rule enforcing contracts transferring possibilities of expectant estates; from physical delivery of the land, to transfer of title by conveyances in writing where the record is notice of prior defects in title. The theory that the attempt to assign a right worked a forfeiture, though inconsistent with equity which abhors forfeitures, is as logical, measured by modern conceptions of legal reasoning, as the rule that a life tenant might convey a fee,—a tortious act could be the foundation of a legal right,—that rights might have their foundation in wrong,—that one could convey that which he did not own,—convey a greater title than he himself possessed. In England, rights and interests in land were later recognized which did not depend on seizin, such as uses, for in *Wil-*

loughby v. *Willoughby*, 1 Term Rep. (Durn. & East's) 763, 765 (99 Eng. Rep. 1366), Lord Hardwicke said:

"Equity always considers who has the right in conscience to the land, and on that ground makes one man a trustee for another."

At early common law, title depended on seizin. There could be no dual title. Now, dual titles are recognized. The vendee in a modern land contract acquires possession, is the beneficial owner of the equitable title, though the legal title is held by the vendor as security for performance by the vendee. An equity of redemption on mortgage foreclosure was once based upon the discretion of the chancellor. It has become a right in property,—an estate which may be sold, assigned and conveyed. At common law, the trustee of real estate was the owner of the fee. The right to enforce the trust was a personal right. A trustee now holds nominal title only. He may resign, die, be removed or succeeded; or his duties may be performed by the court. The title to real estate conveyed by conditional fee is dual in character.

The fee here was conveyed for a particular use, and, never having been applied to that use, no absolute title in equity ever vested in the grantee. If we use the medieval conception of real estate titles, the fee vested in the grantee conditionally, subject to reversion for failure to use the land for the purposes for which it was conveyed. That part of the absolute fee not conveyed, the right to terminate the fee of the grantee for breach of condition subsequent, remained in the grantor.

The holder of a fee on condition subsequent,—a conditional fee,—is in some cases a holder in trust charged with the performance of the condition sub-

sequent. *Smith* v. *Atterby* (*Alterly*), 3 Chan. Rep.
93 (21 Eng. Rep. 739). This rule has been applied
where lands are deeded on condition the grantee
support the grantor or some other person. Such
conditions are conditions subsequent. In such case
—''the conveyance in question should be declared a
trust to secure the performance of these obligations,
and, in case of their nonperformance, this trust
should end, and the property revert to complain-
ant.'' *Cornell* v. *Whitney,* 132 Mich. 300; *Woolcott*
v. *Woolcott,* 133 Mich. 643.

Courts of equity may grant or refuse relief on
conditions peculiar to themselves, sometimes at
variance with the common law. 3 Story's Equity
Jurisprudence (14th Ed.), § 1724. Where a grantee
obtained title for a nominal consideration for a spe-
cific use and the land was not so used and the
grantee by his tortious act, in violation of the terms
of his deed, conveys in form an absolute fee to his
grantee, in violation of the interests of the grantors
sought to be protected and subserved by the condi-
tion inserted in the deed, what reason is there to
forfeit the rights of the grantors or their assigns
reserved in the deed? Such forfeiture ought not to
be enforced in equity. The grantee for a particular
use ought not in equity to be held to have become
vested, without conveyance to him and without con-
sideration, with the right to destroy the beneficial
interests of the grantors or their assigns sought to
be protected by the condition in the deed.

The possibility of a reverter in *Halpin* v. *Rural
Agricultural School District* was ''to the said party
of the first part, their heirs and assigns,'' and in the
case at bar ''to said parties of the first part, their
heirs or assigns.''

The statutes permitting the devise of any interest in property descendible, but for the will, to the heirs of the grantor; permitting conveyance of any interest in real estate by deed without any other act or ceremony whatever; abolishing the necessity of seizin; and prohibiting the tortious conveyance of interests in land not owned by the grantor, have been cited.

"Land has been held to include servitudes, easements, rents, and other incorporeal hereditaments, and all rights thereto and interests therein, equitable as well as legal; *Oskaloosa Water Co.* v. *Board of Equalization of City of Oskaloosa,* 84 Iowa, 407 (51 N. W. 18, 15 L. R. A. 296); *Butler* v. *Green,* 65 Hun (72 Sup. Ct.), 99 (19 N. Y. Supp. 890); and to be synonymous with the terms real estate and real property; *Black* v. *Elkhorn Min. Co.,* 49 Fed. 549; and to include leases for years, remainders, reversions, rentcharges, tithes, advowsons, and titles of honor; *In re Sir J. Rivett-Carnac's Will,* 30 Ch. Div. 136 (54 L. J. Ch. 1074, 33 W. R. 837)." 2 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 1827.

"The term 'conveyance,' * * * shall be construed to embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands." 3 Comp. Laws 1929, § 13309.

In *McKissick* v. *Pickle,* 16 Pa. 140, 149, real estate was deeded for schoolhouse purposes with a provision that, if it ceased to be used for that purpose, it should revert to the party of the first part and *to his heirs and assigns.* It was contended the assigns of the grantor could not enter for breach of condition. It was said:

"That a grantor cannot reserve such a right, will hardly be contended, as in Pennsylvania there is no policy of law which forbids it. The law against maintenance has never been adopted in this State. The reason assigned why a condition in England could not be assigned, is, because no title could be made to land held by another adversely, as that was against the law, which forbid maintenance. And hence the rule, that none but the grantor, or his heirs, can enter for condition broken. This reason does not apply here, where the grantor expressly reserves the right: 55 Law Library, 2 Crabbe on Real Property, pp. 531, 550, §§ 2150, 2189, 2190, and the authorities there cited; *Martin* v. *McCord,* 5 Watts (Pa.), 493 (30 Am. Dec. 342); *Wright* v. *Linn,* 9 Barr (9 Pa.), 433; *Klinkener* v. *School Directors of M'Keesport,* 1 Jones (11 Pa.), 444; *Newkerk* v. *Newkerk,* 2 Caine (N. Y.), 345; *Hamilton* v. *Elliott,* 5 Ser. & R. (Pa.) 375, 385. In the last case, Chief Justice Gibson says, none but the feoffer or his heirs can enter; and the reason why a right of entry cannot be assigned is, that a contrary doctrine would favor maintenance and promote litigation. This is a fair case for the application of the maxim, *cessante ratione cessat ipse lex.*"

In *Cloyes* v. *Beebe,* and *Cloyes* v. *Newton,* 14 Ark. 489, it is said:

"It is true that, at common law, if a man had in him only the right of possession or property, he could not convey it to another, lest, in the language of the ancient law, 'pretended titles might be granted to great men, whereby justice might be trodden down and the weak oppressed.' But this was for the feudal reason that possession was an indispensable element of alienation, of which the law was so tenacious, even after the statute of uses, that a pretense title itself, would not prevent the seizin of the land from passing from the bargainor

to the bargainee by virtue of that statute, where he was actually seized, although his title was but pretended. At the same time reversions and vested remainders might be granted, because it was considered that the possession of the particular tenant was the possession of him in reversion or in remainder, and was not adverse. And upon the same principle the better and more recent authorities show that an equitable interest was always assignable; because after the sale, out of which an equitable interest grew, the vendor and those under him, would hold as trustees for the vendee and those under him, and therefore there could be no such adverse possession as to make the title pretended. But every vestige of this feudal doctrine, which thus restrained the alienation of real estate, has been swept off by our statute, which enacts that, 'Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof.' (Digest 1848, chap. 37, p. 265, § 6.) The next section (Digest 1848, chap. 37, p. 265, § 7), declares that 'The term *real estate,* as used in this act, shall be construed as co-extensive in meaning with "lands, tenements and hereditaments" and as embracing chattels real.' And Sir Edward Coke says, that of these three, 'hereditaments' is by far the largest and most comprehensive expression, because it included not only lands and tenements, but whatever may be inherited, be it corporeal or incorporeal, real, personal or mixed. And thus it appears that, although at common law, there were certain rights to and interests in real estate, that for want of possession, either actual or constructive, could not be alienated to a stranger, although they could be released or devised by will, or would pass to the heir or executor—as contingencies and mere possibilities—such is the comprehensiveness of our statute in embracing hereditaments in the term 'real es-

tate,' that that distinction is also annihilated, and therefore, in this State, *whatever interest in real estate may be inherited, may be bargained, sold and conveyed.*''

*Nutter* v. *Russell,* 3 Metc. (60 Ky.) 163, involved the question of reversion under a will. It was contended the court had no power to order a sale of a contingent interest and that the purchasers at such sale could not acquire a valid interest. The Kentucky statute provided:

"Any interest in, or claim to, real estate, may be disposed of by deed or will in writing. Any estate may be made to commence *in futuro,* by deed in like manner as by will, and any *estate* which would be good as an *executory devise* or bequest shall be good if created by deed.''

The Kentucky statute was similar to 3 Comp. Laws 1929, § 13283, above quoted, in that it provided that any interest in real estate might be conveyed though it was in the possession of someone else. It was said:

"The effect of this enactment is to obviate at once all the difficulties growing out of the distinctions which had been established, by judicial construction, between such estates as were alienable and such as were not. It will not be doubted, we suppose, that under this statute every conceivable interest in, or claim to, real estate, whether present or future, vested or contingent, and however acquired, may be disposed of by deed or will.''

In *Carrington* v. *Goddin,* 13 Gratt. (54 Va.) 587, 599, a similar statute was before the court and it was said:

"It is very clear that before the Code took effect, a bargainee of a party not in possession, actual or

constructive, at the time of the execution of the deed, could not maintain ejectment in his own name, at least against the party at that time in the adverse possession of the land. His disability to maintain the action proceeded, not from the act against conveying or taking pretensed titles, 1 Rev. Code 1819, chap. 103, p. 375, but from the common law, whose maxim it was that nothing in action or entry could be granted over. A feoffment was void without livery of seizin; and without possession there could be no livery of seizin. 4 Kent Commentaries, 448; 2 Lom. Dig. 8, 9. The statute of uses, 1 Rev. Code 1819, chap. 99, § 29, p. 370, did not remove the disability, because it only operated on a possession existing in the bargainor at the time of the execution of the deed, and transferred that possession to the use created or declared in favor of the bargainee. If no possession existed in the bargainor, of course none could be transferred to the bargainee. But the Code has changed the common-law rule by declaring that 'any interest in or claim to real estate may be disposed of by deed or will.' Rev. Code 1849, chap. 116, § 5, p. 500. That such a change was contemplated by the revisors, is manifest from their report, p. 602, § 5, and note ‡. They recommended the adoption of a section similar to 8 & 9 Vict. chap. 106, § 6; in which 'a right of entry' is expressly named. Instead of adopting that section, which is complicated in its details, the legislature enacted the provision before quoted. Their object was to use brief and plain terms, which would be at least as extensive in their meaning as the terms used in the statute of Victoria. They could not have used more comprehensive terms than they did. A right of entry is certainly 'an interest in or claim to real estate,' and may therefore 'be disposed of by deed or will.' If it may be so disposed of, the grantee or devisee may bring the action in his own name.''

In *Young* v. *Young,* 89 Va. 675 (17 S. E. 470, 23 L. R. A. 642), it is said:

"At common law, it is true, a *naked possibility,* such as this remainder, which was uncertain as to the person, could not be the subject of assignment or conveyance; but 'this matter,' as Mr. Minor expresses it, is assisted in Virginia by statute, which provides that any interest or claim to real estate may be disposed of by deed or will. 2 Minor's Inst. 362; Code of 1888, § 2418. 'The effect of this enactment,' as was said by the supreme court of Kentucky, in *Nutter* v. *Russell,* 3 Metc. (60 Ky.) 163, 'is to obviate at once all the difficulties growing out of the distinctions which had been established by judicial construction between such estates as were alienable and such as were not. It will not be doubted, we suppose, that under this statute every conceivable interest in or claim to real estate, whether present or future, vested or contingent, and however acquired may be disposed of by deed or will.' *Faulkner* v. *Davis,* 18 Gratt. (59 Va.) 651, 674 (98 Am. Dec. 698)."

In *Wilson* v. *Langhorne,* 102 Va. 631 (47 S. E. 871), the court quoted with approval the language of *Carrington* v. *Goddin,* above quoted, and said:

"The court in that case indulges in no refinement of construction. It is content to give to plain words their usual and everyday meaning, and the interpretation there placed upon the statute did away forever with the niceties by which the devolution of property had theretofore been embarrassed and hindered, and made capable of disposition by deed or will any interest in or claim to real estate."

A similar statute was before the court in *Moore* v. *Sharpe,* 91 Ark. 407, 418 (121 S. W. 341, 23 L. R. A. [N. S.] 937), where, after reviewing the authorities, it is said:

"We think it clear, both upon reason and authority, that where, as in this State, the common-law

doctrine of livery of seizin is abolished by a statute authorizing a conveyance of land, whether held in possession or not, a subsequent deed executed by an original grantor on condition is equivalent to re-entry, and is effectual for the purpose of declaring a forfeiture and vesting the title in the subsequent grantee.''

In this case, it is said, p. 410:

''The doctrine of estates upon condition is of feudal origin, of which system the doctrine of title by livery of seizin formed an essential part, on account of the condition of real property at that time, and the only practical method of conveying it. This was then a doctrine of necessity, for in that day no system of registration of conveyances existed. Indeed, lands were not generally conveyed by writings, and the only practical method of giving notice of a change of title was either by actual delivery of possession or by symbolic delivery in sight of the land.

''At common law, the only method whereby a forfeiture could be effected for breach of condition was by re-entry upon the premises or by a public attempt to re-enter, with a declaration of forfeiture. This, too, grew out of the doctrine of livery of seizin, the reason being that the forfeiture for condition broken must be accomplished by acts of equal dignity and notoriety with those which created the condition, *viz.*, delivery, either actual or symbolic. 'As by the old common law a freehold could be created only by the ceremony of livery of seizin, the corresponding ceremony of re-entry was necessary in order to determine it, or, as Coke has it, ''an estate of freehold cannot begin nor end without ceremony.'' ' (1 Jones Law of Real Property in Conveyancing, § 715.) 'The entry, moreover, in the language of the Touchstone, should be ''an open and notorious act, equivalent to investiture of land by livery of seizin, that notoriety might be given to the

change of title.'' It is not necessary, however, that the party entering should declare at the time for what purpose he enters. The act speaks for itself.' (1 Jones Law of Real Property in Conveyancing, § 716.)

"In his recent work on Real Property, Professor Minor (vol. 1, p. 532), says: 'It is an established rule of the common law that if the conditional estate be a freehold the mere occurrence of the event which constitutes the violation of the condition does not defeat the estate, because as a freehold can, at common law, only be created by livery of seizin, there is needed a corresponding notoriety in order to determine it. This corresponding notoriety is the re-entry of the grantor or his heirs. * * * No actual re-entry is necessary to determine an estate for years on condition, "for, as a term of years may begin without ceremony, so it may end without ceremony." '

"It also must be conceded that at common law the right of re-entry for condition broken was not assignable, and could only be exercised by the grantor who created the condition, or by his privies in blood. It could not be exercised by one who was only the grantor's privy in estate. This under the maxim that, in order to discourage maintenance, 'nothing which lies in action, entry or re-entry can be granted.' The same rule prohibited the conveyance of lands held adversely, or any interest therein. This rule was created under the English statute (32 Henry 8, chap. 9) against selling pretended titles, and Sir Edward Coke states the reason therefor as follows: To prevent 'maintenance, suppression of right, and stirring up of suits; and therefore nothing in action, entry or re-entry can be granted over; for so under color thereof pretended titles might be granted to great men whereby right might be trodden down and the weak oppressed, which the common law forbiddeth.' Coke on Littleton, p. 214a.

"In many of the States of the American Union this English statute against the sale of pretended titles to lands not in possession has been re-enacted, and in a few States the doctrine has been recognized and enforced as a part of the common law. But this court in *Lytle* v. *State,* 17 Ark. 608, 674, held that 'the provisions of these statutes, upon which so much of the law of maintenance and champerty rests for support in the English law, so far from having been re-enacted in this State, have been met here by directly conflicting legislation in the several provisions touching the sale of real estate held in adverse possession; whereby the right of "alienation and purchase" of every interest, title and estate therein "has been enlarged almost to an unlimited extent." ' "

Kansas has a statute in all respects substantially like 3 Comp. Laws 1929, § 13278. This statute came before the court in *Miller* v. *Miller,* 91 Kan. 1, 4 (136 Pac. 953, L. R. A. 1915 A, 671, Ann. Cas. 1917 A, 918), where the validity of a freehold estate in remainder to commence in the future was in question. It was conceded that at common law such an estate could not be created without a grant of a precedent estate to support it. But it was held the common-law rule had been abrogated by statute. It was said:

"The words, 'conveyances of land,' mean, of course, the land itself in fee simple absolute. The words, 'any other estate or interest therein,' include estates of freehold and less than freehold, of inheritance and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy.

"The doctrine of the particular estate arose from the necessity under the feudal system of always

having a tenant to fulfill feudal duties, defend the estate, and represent it so that other claimants might maintain their rights. The only way to pass a freehold estate was by livery of seisin which operated immediately or not at all, and if the freehold became vacant the lord had an immediate right of entry and all limitations of the tenancy came to an end. The result was that in order to create a freehold estate, the enjoyment of which was to be postponed to a future time, it was necessary to support it by a precedent particular estate taken out of the inheritance, and to make livery of seisin to the particular tenant, which by fiction inured to the remainder man or remainder men.''

In *Shell Petroleum Corp.* v. *Hollow* (C. C. A.), 70 Fed. (2d) 811, a question analogous to that here involved was before the court. Counsel discussed whether the instrument created a fee simple on condition subsequent with a possibility of reverter, or an estate in determinable fee. It was said:

''It is unnecessary to determine that question because the common-law rule that the possibility of reverter is neither an alienable, assignable, or descendible estate has been abrogated by statute in Kansas.   *   *   *
''It is immaterial to a decision of this case whether the deed to the school district conveyed a fee simple estate on condition subsequent or an estate in determinable fee. A discussion of that question would be beside the decisive point. The rights of Ediger, in either event and whatever their nature, could be passed by deed.''

11. In *Halpin* v. *Rural Agricultural School District,* plaintiff sought to enjoin defendant from selling school buildings on the land and recover the land because defendant had ceased to use it for

schoolhouse purposes. Defendant in its answer and in its brief in this court *disclaimed any interest in the real estate,* but claimed the schoolhouse erected on the land and its equipment belonged to the district and might be removed therefrom. Plaintiff contended there was a distinction between a condition subsequent and a conditional limitation and tried the case upon the theory the schoolhouse was real estate, attached to the soil, and reverted to him. In his brief in this court, plaintiff conceded *"that by the great weight of authority, a possibility of reverter is not under the common law alienable or diversable."* Appellee in its brief said:

*"It is conceded by plaintiff's counsel in his brief that by the great weight of authority a possibility of reverter remaining after a conveyance upon a condition subsequent is not alienable or devisable."*

Defendant contended the use of the land was for a specific purpose, for an indefinite period, and amounted merely to a lease of the land so long as used for school purposes and it had a right to remove the building and equipment therefrom at any time during the continuance of its occupation or within a reasonable time thereafter, relying upon the rule of *School District No. 5 of Delhi* v. *Everett,* 52 Mich. 314; *Osborn* v. *Potter,* 101 Mich. 300; *Hayward* v. *School District No. 9 of the Township of Hope,* 139 Mich. 539; *Higginbotham* v. *Phillips,* 192 Mich. 49; *Waverly Park Amusement Co.* v. *Michigan United Traction Co.,* 197 Mich. 92, to which may now be added the later case of *Cameron* v. *Oakland County Gas & Oil Co.,* 277 Mich. 442 (107 A. L. R. 1142).

Though plaintiff's concession related to the rule of the common law, counsel for defendant, and the

court, treated it as a concession as to the present law governing the question.

It will be seen (a) that in *Halpin* v. *Rural Agricultural School District,* there was apparently a concession of counsel as to the applicable rule and no real contentious litigation of the question; (b) that neither counsel for plaintiff or defendant called the attention of the court to the statutory provisions expressly making reversionary interests in real estate alienable; (c) the court's attention was not called to the provisions of 3 Comp. Laws 1929, § 13278, which expressly provides for the conveyance of lands, or of any estate or interest therein, by deed; (d) nor was it insisted that plaintiff's interest was an expectant estate made alienable by 3 Comp. Laws 1929, § 12955, when construed in connection with 3 Comp. Laws 1929, §§ 12929, 12932.

The foregoing is important only as showing the common-law rule, the background against which modern statutes relating to real estate must be construed, and as an alibi for error.

12.   (a) The basis of the doctrine of *Halpin* v. *Rural Agricultural School District* was long ago cut away by statutes of the same kind that destroyed it in Pennsylvania, in Kentucky, in Virginia, in Arkansas, in Kansas, and in all other states where such statutes are in force.   The statute formerly governing champerty and maintenance has been repealed, and the only statute in force is applicable only to attorneys and counselors.   3 Comp. Laws 1929, § 13593.   32 Henry 8, chap. 9, is not in force in this State at this time, nor was it in force when *Halpin* v. *Rural Agricultural School District* was decided.

(b) Chapter 62 of the Revised Statutes of 1846, entitled: "Of the nature and qualities of estates

in real property, and the alienation thereof." (3 Comp. Laws 1929, chap. 251, § 12921 *et seq.*), was adopted from 1 Rev. Stat. 1829 of New York, pt. 2, chap. 1, title 2, art. 1, entitled: "Of the nature and qualities of estates in real property, and the alienation thereof." So nearly does chapter 62 of the Rev. Stat. 1846, (3 Comp. Laws 1929, chap. 251, § 12921 *et seq.*) follow that part of the Revised Statutes of 1829 of New York above referred to, that in the particulars here involved they are identical in language and in the numbering of the sections.

Section 7, chap. 62 of the Revised Statutes of 1846 (3 Comp. Laws 1929, § 12927) provides:

"Estates, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy."

Section 8 (3 Comp. Laws 1929, § 12928) provides:

"An estate in possession is where the owner has an immediate *right* to the possession of the land; an estate in expectancy is where the *right* to the possession is postponed to a future period."

Section 9 (3 Comp. Laws 1929, § 12929) provides:

"Estates in expectancy are divided into,

"First. Estates commencing at a future day, denominated future estates; and,

"Second. Reversions."

Section 12 (3 Comp. Laws 1929, § 12932) provides:

"A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised."

Section 35 (3 Comp. Laws 1929, § 12955) provides:

"Expectant estates are descendible, devisable and alienable, in the same manner as estates in possession."

The hair-splitting distinctions between a right of reverter, a naked right of reverter, a right of entry for condition broken, possibility of right of re-entry for condition broken, and mere naked possibility of right of re-entry for condition broken vanish before the plain language of the statutes classifying and defining estates in lands, first enacted by the Revised Statutes of 1829 of New York, and adopted verbatim by the Revised Statutes of 1846.

(c) Chapter 65 of the Revised Statutes of 1846 (3 Comp. Laws 1929, chap. 260, § 13278 *et seq.*) departed somewhat from 1 Rev. Stat. 1829 of New York, pt. 2, chap. 1, title 2, art. 4.

Section 136, art. 4, title 2, chap. 1, pt. 2, of the Rev. Stat. 1829 of New York, provides:

"The mode of conveying lands by feoffment with livery of seizin, is abolished."

Section 137 provides:

"Every grant in fee or of a freehold estate, shall be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass," etc.

Section 1, chap. 65 of the Revised Statutes of Michigan of 1846 (3 Comp. Laws 1929, § 13278), above quoted, provides for the conveyance of lands, or of any estate or interest therein, by deed *without any other act or ceremony whatever.* The abolition of all other acts and ceremonies except making, execution, acknowledgment and delivery of a deed is more sweeping than that of the Revised Statutes of 1829 of New York.

Section 147 of the same article, title, chapter, and part, of the Rev. Stat. 1829 of New York, above referred to, provides:

"Every grant of lands shall be absolutely void, if at the time of the delivery thereof, such lands shall

be in the actual possession of a person claiming under a title adverse to that of the grantor.''

The language ''at the time of the delivery thereof'' relates to the delivery of the conveyance in writing,—the grant. See section 138 of the same article, title, chapter, and part, of the Revised Statutes of 1829 of New York.

Section 147 of part 2, chap. 1, title 2, art. 4 of the Revised Statutes of New York, above referred to, declared a rule in conformity with the common law as laid down in *Bruckner* v. *Lawrence, supra.*

The provisions of the original bill for revision introduced in the Michigan legislature of 1846 covering this subject are not known. When chapter 65 of the Revised Statutes of 1846 was under consideration in committee of the whole in the State Senate, March 27, 1846, sections 7 and 8 of chapter 65 of the proposed revision were stricken out and section 7 as subsequently enacted (3 Comp. Laws 1929, § 13283), above quoted, inserted in their place. Senate Journal on Revision, p. 46.

The statutes of 1829 of New York, so far as applicable, were adopted in Michigan with the modifications above noted, and the English statutes of 3 & 4 Will. 4, Will. 4 & 1 Vict. and 8 & 9 Vict. above cited were in effect re-enacted in Michigan, though the New York revision preceded the enactment of the English statutes above referred to in point of time.

(d) The statutes of this State above cited are so plain as to need no construction. It is established: *first,* that the grantors owned the premises in controversy in absolute fee simple; *second,* that they sold and conveyed a conditional fee therein; *third,* that interest which constituted the difference be-

tween the absolute fee which plaintiffs owned and the conditional fee which they conveyed reserved by grantors was a reversion,—that is, the residue of the estate left in the grantors after the conveyance of a conditional fee, commencing in possession on the determination of a particular estate granted or devised, an estate in possession being one where the owner has an immediate right to the possession; *fourth,* this reversion or reversionary right in the premises in question reserved by the grantors was descendible, devisable and alienable in the same manner as estates in possession; *fifth,* being alienable, by statute such reversion or reversionary interest could be conveyed by deed without any other act or ceremony whatever.

13. It is contended that to overrule *Halpin* v. *Rural Agricultural School District* will interfere with vested rights.

(a) In *Ex Parte Bollman* and *Ex Parte Swartwout,* 4 Cranch (8 U. S.), 75, 103 Mr. Justice Johnson said:

"I am far, very far, from denying the general authority of adjudications. * * * But I deny that a court is precluded from the right, or exempted from the necessity, of examining into the correctness or consistency of its own decisions, or those of any other tribunal. * * * Strange indeed would be the doctrine, that an inadvertency once committed by a court shall ever after impose on it the necessity of persisting in its error. A case that cannot be tested by principle is not *law,* and in a thousand instances have such cases been declared so by courts of justice."

In *Wood* v. *Brady,* 150 U. S. 18 (14 Sup. Ct. 6), it is said:

"If they (courts) were absolutely bound by their prior decisions, they would be without the power to correct their own errors."

"This court recognizes to its fullest extent the necessity for stability, consistency, and a firm adherence to the doctrine of *stare decisis* in passing upon and construing any provision of the organic law; but, if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been re-asserted and acquiesced in for a long number of years." *Arnold* v. *Knoxville,* 115 Tenn. 195, 202 (90 S. W. 469, 3 L. R. A. [N. S.] 837, 5 Ann. Cas. 881).

"The doctrine of *stare decisis,* like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason. The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question. Chancellor Kent, commenting upon the rule of *stare decisis,* said that more than a thousand cases could then be pointed out, in the English and American reports, which had been overruled, doubted or limited in their application. He added that 'it is probable that the records of many of the courts of this country are replete with hasty and crude decisions; and in such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.' (1 Kent's Commentaries (13th Ed.), 477; Broom's Legal Maxims, 153; *Gifford* v. *Livingston,* 2 Denio (N. Y.), 380, 392; *Morse* v. *Goold,* 11 N. Y. 281 (62 Am. Dec. 103); *Judson* v. *Gray,* 11 N. Y. 408.)" *Rumsey* v. *Railroad Co.,* 133 N. Y. 79, 85 (30 N. E. 654, 15 L. R. A. 618, 28 Am. St. Rep. 600).

"Because a judicial decision may apply to past as well as to future titles and conveyances, a change in a rule of property is to be avoided where fairly possible. But where it clearly appears that a decision, especially a recent one, was wrong and continuing injustice results from it, the duty of the court to correct the error is plain." *Hilt* v. *Weber*, 252 Mich. 198 (71 A. L. R. 1238).

(b) An examination of the briefs in *Halpin* v. *Rural Agricultural School District* shows the court treated the concessions of counsel as the law of the case.

"A mere concession of counsel in a former case cannot be regarded as a judicial establishment of the point conceded." 15 C. J. p. 940; *State, ex rel. Wine,* v. *Railroad Co.,* 99 Mo. 30 (12 S. W. 290, 6 L. R. A. 222).

14. The rule of *Halpin* v. *Rural Agricultural School District* should be overruled. It is unfounded in law.

(a) The opinion indicates that the writer thereof regarded the rule established and declared as unreasonable.

(b) The court, in deciding that case, overlooked the statutes which had been in force in this State since 1846 defining reversions or reversionary interest in lands, making them alienable, and providing such interests might be alienated by deed.

(c) Apparently, without any consideration of these statutes, the court adopted a rule of law based upon the medieval doctrine of seizin and the impossibility of livery of seizin when the possession of the property was held by someone other than the grantor, a doctrine which had been abrogated by statute in this State since 1846.

(d) The court overlooked its plain duty to follow the language of the applicable statutes.

"What a court is to do,  *  *  *  is to declare
the law as written." 1 Cooley's Constitutional Limitations (8th Ed.), p. 124.

(e) Though the court, even if it had in mind the
statutes above mentioned, had the power to ignore
such statutes, it had no right to do so. Cardozo, The
Nature of the Judicial Process, p. 129.

(f) "Judicial power, as contradistinguished from
the power of the laws, has no existence. Courts are
the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it
is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law;
and, when that is discerned, it is the duty of the
court to follow it. Judicial power is never exercised
for the purpose of giving effect to the will of the
judge; always for the purpose of giving effect to the
will of the legislature; or, in other words, to the will
of the law." *Osborn* v. *Bank of United States,* 9
Wheat. (22 U. S.) 738, 866.

(g) No one has a vested right to rely upon an
erroneous opinion in an analogous case (*Crigler* v.
*Shepler,* 79 Kan. 834 [101 Pac. 619, 23 L. R. A.
(N. S.) 500]), to be protected in claimed rights based
upon palpable wrong, or to be relieved either in law
or in equity from his own mistake in law. *Lyon* v.
*Richmond,* 2 Johns. Ch. (N. Y.) 51.

(h) The lands in question were in 1910 owned by
plaintiffs. October 22, 1912, plaintiffs conveyed a
conditional fee therein by warranty deed upon condition subsequent to Brooks, trustee. The statutes
provided plaintiffs could convey any interest in the
premises by deed. They retained a reversionary interest in the lands so conveyed. That reversion, or
reversionary interest, they could convey by deed.
May 26, 1916, plaintiffs conveyed this reversionary
interest to Parke and wife. Parke and wife had a

right to convey such interest acquired from plaintiffs, to whomsoever they saw fit and they did convey their interest therein by reconveying it to plaintiffs. Such interest is now revested in plaintiffs and plaintiffs' property rights based upon statutes which have been in force in this State for more than 90 years should be protected.

(i) If the rule of *Halpin* v. *Rural Agricultural School District* is adhered to, not only will plaintiffs' rights be forfeited, but the statutes applicable to the questions involved, in force in this State since 1846, will be disregarded and overridden and plaintiffs illegally deprived of their property. No one has a vested right to ignore a public statute enacted by the legislature in the exercise of its undoubted power, applicable to transactions into which he enters, which has been in force for more than 90 years.

(j) This court ought not to hesitate to pass upon the rights of one who, claiming to have acquired title in good faith to the property in question, obtained it by grant from those who never had the right to convey that which they did not own.

(k) In deciding the *Halpin Case,* the court did not consider, at least did not mention, that that decision, made in plain violation of the applicable statutes, imperiled the rights of thousands of people who had rights of property which, if the rule of that decision is good, were by it confiscated and destroyed. Upon a mere balancing of equities, the rule of *Halpin* v. *Rural Agricultural School District* should be overruled.

(l) This court ought not to disturb, or to deny, plaintiffs' rights in the property in question,—rights which were in force in 1912 when plaintiffs conveyed the conditional fee therein to Brooks, trustee,— rights which were lawfully conveyed by plaintiffs

to Parke and wife,—rights which vested in Parke and wife for a valuable consideration paid by them to plaintiffs for such rights,—rights which Parke and wife under the statute could reconvey to plaintiffs,—rights which were vested in plaintiffs at the time this suit was commenced,—rights which are still vested in plaintiffs, though it is now claimed such rights are divested by the rule in *Halpin* v. *Rural Agricultural School District* without notice, hearing, or an opportunity to be heard,—without due process of law.

(m) *Halpin* v. *Rural Agricultural School District* was decided October 1, 1923. This suit was commenced November 25, 1931, eight years, one month and 24 days afterward. The applicable statute of limitations (3 Comp. Laws 1929, § 13964, subd. [3]) is 15 years. August 27, 1930, the successors in title to the conditional fee in the strip of land in question conveyed by plaintiffs to Brooks, trustee, conveyed it by Union Guardian Trust Company and Eastern Michigan Properties Corporation to Grover C. Dillman, State highway commissioner. At that time, the right of reversion was vested in plaintiffs and their right of re-entry into the possession of the premises for the first time accrued against defendants. 3 Comp. Laws 1929, § 13966.

(n) The pretended rights of a rich and powerful State, based solely on tenderness for palpable error, ought not to be given preference over the admitted rights of its citizens, based upon the plain provisions of applicable statutes, in force when such rights accrued and in force now.

Plaintiffs should be entitled to a decree as prayed, with costs.

Wiest, C. J., and Sharpe, J., concurred in the result reached by dissenting opinion.

Fead, J., took no part in this decision.